CASTLEBROOK, LIMITED, Appellee,

v.

DAYTON PROPERTIES LIMITED PARTNERSHIP, Appellant.

[Cite as *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340.]

Court of Appeals of Ohio,
Montgomery County.

No. 12776.

Decided Feb. 20, 1992.

Wilson, J., dissented.

*Walter Reynolds,* for appellee.

*Lawrence T. Burick,* for appellant.

FAIN, Presiding Judge.

In this foreclosure action, defendant-appellant, Dayton Properties Limited Partnership ("DPLP"), appeals from the order of the Montgomery County Court of Common Pleas granting the motion of Raymond C. Frye, as court-appointed receiver of the mortgaged property, for leave to file a proof of claim against DPLP in its Chapter 11 bankruptcy proceedings and to commence a lawsuit against the general partners of DPLP to recover tenant security deposits received by Castlebrook prior to the appointment of the receiver.

DPLP contends that: (1) the trial court exceeded its authority in authorizing Frye to undertake these actions because tenants' security deposits are not

part of the property in this receivership and were not the subject of the mortgage; and (2) Frye cannot pursue the general partners of DPLP until: (a) all DPLP assets are exhausted, and (b) the claims for the return of the security deposits are ripe. Because we conclude that the trial court erred as a matter of law in authorizing the receiver to take action that was not respecting the property that was the subject of the foreclosure action and, therefore, from which no creditor of that property could benefit, we reverse the order of the trial court.

## I

DPLP gave a non-recourse mortgage on certain real property including the Castlebrook Apartments in Montgomery County to secure a note to Castlebrook and assumed Castlebrook's prior obligation on a note from Castlebrook to Mutual Life Insurance of New York ("MONY") that was secured by a first mortgage on the property. The Castlebrook mortgage covers the real property and certain fixtures on it and also contains an assignment of the rents, profits, and issues of the property to Castlebrook. DPLP defaulted in its payments to MONY and to Castlebrook, and on March 1, 1990, Castlebrook brought suit to foreclose the mortgage and determine priority of liens.

Castlebrook, pursuant to paragraph 10 of the mortgage, moved for the appointment of a receiver to collect the rents and manage the property, and the court granted the motion. The receivership was vacated and reinstated twice, once pursuant to agreement between Castlebrook and DPLP, and once after a general partner of DPLP filed an involuntary Chapter 11 bankruptcy petition against the partnership in the United States District Court for the District of Massachusetts. Castlebrook obtained relief from stay from the bankruptcy court "for all purposes with respect to *Castlebrook's interests* in the property of the estate of debtor Dayton Properties Limited Partnership, including the property known as Castlebrook Apartments, in Madison Township, Montgomery County, Ohio." (Emphasis added.)

Frye subsequently discovered a deficiency of approximately $50,000 in DPLP's tenant security deposit account and moved for authority to pursue the partnership and the partners to recover the deficiency. In his motion, he alleged that these tenant security deposits were assets of the estate and should have been held in trust for the payment of damages caused by tenants or to refund to the tenants when they vacated the premises.

The trial court granted the motion, and the same day entered judgment against DPLP on the foreclosure claim but left open cross-claims by other

defendants against DPLP.[1] DPLP appeals from the order authorizing Frye to proceed against DPLP and its general partners.

## II

We raised the question during oral argument whether the order appealed from is a final appealable order. Both parties have asserted that the order appealed from is a final appealable order, and we agree.

The order appointing the receiver and authorizing him to take certain action is "an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment" for purposes of R.C. 2505.02. Receivers' powers cannot be attacked collaterally but only in a direct appeal. *Grant v. A.B. Leach* (1930), 280 U.S. 351, 359, 50 S.Ct. 107, 110, 74 L.Ed. 470, 475. Therefore, the only opportunity to question the order is in this direct appeal from the order, and this court has jurisdiction to determine the issues.

## III

DPLP's sole assignment of error is as follows:

"The trial court erred in sustaining the receiver's motion seeking an order for leave to file a proof of claim, bring a lawsuit and employ counsel."

In addition to this assignment of error, DPLP also assigns three sub-assignments of error as follows:

"The trial court erred and acted without authority when it authorized the receiver to assert claims against DPLP and its general partners for the return of the security deposits collected prior to the receiver's appointment since these security deposits were not part of the real property and were not subject to the Castlebrook mortgage.

"The trial court erred when it permitted the receiver to assert claims against the DPLP general partners because the receiver did not plead that there were insufficient partnership assets to satisfy the claims.

"The trial court erred in allowing the receiver to assert claims against the DPLP general partners because these claims were not ripe."

DPLP argues that the receiver in a foreclosure action is a special, limited receiver who may act only with respect to the real property or other assets that are the subject of the mortgage that is being foreclosed. DPLP argues

---

1. We assume, since there is nothing in the file to suggest otherwise, that these creditors have not obtained relief from stay from the bankruptcy court to pursue their claims against DPLP in this action.

further that the tenants' security deposits are not part of the mortgage and do not run with the land; therefore, they argue, it is either an error of law or an abuse of discretion for the court to authorize the receiver to pursue those funds against either the partnership or its general partners, since that action is not authorized by law.

Frye argues that because the court had authority to appoint a receiver it was not an abuse of discretion to authorize him to attempt to collect the security deposits, and that this is not the appropriate forum to determine whether he would prevail on his claims.

## A. *Standard of Review*

■ The first question to address is whether the proper standard of review is abuse of discretion or error of law. "Abuse of discretion" has been defined by the Ohio Supreme Court as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. The abuse of discretion standard should be used when the trial court makes discretionary decisions based on such things, for example, as evaluating the credibility of witnesses, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276; ruling on the admission of evidence; making factual determinations, *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601; and whether to appoint a receiver, *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 573 N.E.2d 62.

However, where a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use an abuse of discretion standard. In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law.

Confusion has been engendered by an unfortunate choice of words when courts have said on occasion that an abuse of discretion connotes "more than an error of law." It would be more accurate to say that an abuse of discretion is "different from an error of law." A trial court's purely legal determination will not be given the deference that is properly accorded to the trial court with regard to those determinations that are within its discretion.

In the case before us, a threshold issue of law is whether a trial court may authorize a receiver to take the action that this receiver has been authorized to take. If the answer to that question is in the negative, then there would be no discretion for the trial court properly to exercise, and the purported

authorization of the receiver would be erroneous as a matter of law. If, on the other hand, the answer to the threshold question is in the affirmative, then the issue would become whether the trial court, under the circumstances in which it did so, was within its discretion in authorizing the receiver to take the action, or whether it was an abuse of discretion to do so. Under the circumstances of this case, the issue would become whether there is a sufficiently reasonable chance that the receiver would be successful in taking the authorized action in the bankruptcy or against the general partners. If so, then the authority vested in the receiver would be reasonable, and not an abuse of discretion. If not, then the authority vested in the receiver would be unreasonable, as a waste of scarce resources, and it would constitute an abuse of discretion.

## B. *Authority of Receiver*

A trial court generally has authority to appoint a receiver in a mortgage foreclosure action. R.C. 2735.01 provides that a receiver may be appointed in a mortgage foreclosure action:

"A receiver may be appointed by * * * the court of common pleas or a judge thereof * * * in the following cases:

" * * * *

"(B) In an action by a mortgagee, for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt[.]"

Further, the receiver has been given certain powers by statute:

"Under the control of the court which appointed him, as provided in section 2735.01 of the Revised Code, a receiver may bring and defend actions in his own name as receiver, take and keep possession of property, receive rents, collect, compound for, and compromise demands, make transfers, and generally do such acts *respecting the property* as the court authorizes." (Emphasis added.) R.C. 2735.04.

The authority granted to the receiver by the legislature to take actions authorized by the court is limited to "such acts respecting the property" that is the subject of the receivership. The question then becomes whether the security deposits that the receiver wants to seek to recover in the case before us are "respecting the property."

 The receiver in a mortgage foreclosure action does not have the all-encompassing powers of a general receiver of all property of the debtor, but is

instead limited to taking those actions "with respect to" the property covered by the mortgage that is being foreclosed. Castlebrook in its motion for appointment of receiver requested a "[r]eceiver of certain real property * * * [the mortgaged property] commonly known as Castlebrook, * * * to take possession of said real property and collect all rents, issues, and profits thereof." The order appointing receiver authorized Frye to "take and have complete and exclusive control, possession and custody of the Property commonly known as The Castlebrook Apartments, located at 5900 MacDuff Drive, Dayton, Ohio," and authorized him to "manage, operate, control, protect, and preserve the Property * * *."

This order is consistent with the statutory authorization for the receiver to take actions "respecting the property" in that it limits the authority of the receiver to act only with regard to the real property.

### C. *Tenants' Security Deposits*

■ The question then becomes whether tenants' security deposits "respect the property" that is the subject of the mortgage. In this case, the order appealed from authorized the receiver to prosecute claims to recover a deficiency in the tenants' security deposits account either from DPLP's bankruptcy estate or from DPLP's general partners. The security deposits were pledged by the tenants to DPLP before the receiver was appointed. In Ohio, security deposits are not "rent, issues, and profits" of the property; rather, they are a personal obligation in the nature of a pledge between the landlord and the tenant. The liability to return the deposit remains with the pledgee as such, and not with a subsequent lessor, unless the subsequent lessor has assumed the obligation or has received a credit on the purchase price for the amount of the security deposits. *Tuteur v. P. & F. Enterprises, Inc.* (1970), 21 Ohio App.2d 122, 133, 50 O.O.2d 219, 225, 255 N.E.2d 284, 291, *Lindblad v. Carter* (1981), 1981 WL 4427, citing 33 American Jurisprudence 2d Landlord and Tenant, Section 398, at 305–306.

■ An obligation of a landlord to a tenant to return a security deposit does not run with the land. Covenants that will run with the land must be so connected with, attached to, and inherent in the land that the assignee of the reversion would have the right to take advantage of it or be obligated to perform it. *Masury v. Southworth* (1859), 9 Ohio St. 340, 347–348. Further, if the covenant is of such a nature that the law permits it to run with the land, the parties must have intended that the covenant should run with the land. "[I]f * * * the law does not permit it to be attached, it can not be attached by the agreement of the parties, and the assignee would take the estate clear of any such covenant." *Masury* at 348.

The law of Ohio with respect to security deposits is that they are in the nature of pledges and the liability for the return of them does not run with the land but is a personal contractual obligation. *Tuteur, supra.* While that contractual obligation can be voluntarily assumed by a subsequent owner, the property is not subject to the obligation.

 The essential principle that we distill from *Tuteur* and *Masury, supra,* is that the respective interests of pledgor and pledgee to a tenant's security deposit are purely personal to them and do not follow the ownership interest in the real property that is the subject of the lease. Thus, in the absence of any express assignment to the mortgagee by either the tenant or the original landlord who accepted the security deposit, the mortgagee would have no legally cognizable interest in the security deposit. The disposition of the security deposit would remain a matter for the concern exclusively of the tenant who furnished the deposit and the landlord who originally accepted it.

 Castlebrook has contended that it has an interest in the security deposits as: (i) securing the payment of rents accruing after foreclosure, and (ii) securing damage to the property that is the fault of the tenant. Because interests in security deposits do not run with the land, we conclude that they may not be used to protect a succeeding owner of the property who was neither a party to the pledge represented by the security deposit, nor an assignee of such a party.

Because Castlebrook can assert no interest in the security deposits, and because interests in the security deposits do not run with the property securing Castlebrook's mortgage, the receiver could not be authorized to pursue a claim for the recovery of the security deposits.

 The Landlord–Tenant Act does not affect that result. R.C. 5321.16 sets forth security deposit procedures as follows:

"(A) Any security deposit in excess of fifty dollars or one month's periodic rent, whichever is greater, shall bear interest on the excess at the rate of five per cent per annum if the tenant remains in possession of the premises for six months or more, and shall be computed and paid annually *by the landlord* to the tenant.

"(B) Upon termination of the rental agreement any property or money *held by the landlord* as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. * * *" (Emphasis added.)

A "landlord" is defined in R.C. 5321.01(B) as follows:

" 'Landlord' means the owner, lessor, or sublessor of residential premises, his agent, or any person *authorized by him* to manage the premises." (Emphasis added.)

A receiver is authorized by the court, not the owner, to manage the premises. A receiver is acting, not on behalf of the owner, but on behalf of the owner's creditors. The receiver, if he actually had possession of the tenants' security deposits, would be obligated to return them to the tenants or to reach new contractual agreements with the tenants with respect to the deposits; but absent a new agreement with the tenants, the receiver has no right to the money, because a security deposit arrangement is a personal arrangement between the landlord and the tenant.

 It would be unfair to the receiver and the creditors he represents to impose an obligation on him to refund money that he does not have when the refund does not benefit the creditors that he represents. To impose on him such an obligation would be to place tenants in a superior position to the first mortgagee of the property, and this we will not do.

### D. *Receiver's Standing to Sue*

 Frye argues that he has standing to sue because the court has authorized him to sue on behalf of any interested party. But the tenants are not creditors of, and have no claim against, the property. Because the tenants are not in any sense lienholders of the property, who are the parties the receiver represents, any action taken by the receiver on behalf of the tenants would be a gratuitous action taken at the expense of the lienholders to whom he is accountable. Because the class that the receiver represents would not benefit from the recovery of the security deposits, the receiver is not a real party in interest as required by Civ.R. 17(A). Because he is not a real party in interest, he does not have standing to sue for the return of the security deposits.

### E. *Suit Against General Partners*

 Frye argues that it was not an abuse of discretion to authorize the Receiver to take action against the general partners and the bankruptcy estate because the trial court had authority to appoint a receiver and the trial court has discretion to expand the receiver's powers as necessary, citing *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 573 N.E.2d 62. *Gibbs* is not helpful in resolving this question, however, because the action authorized by the trial court in *Gibbs,* collecting rents, is specifically authorized by R.C. 2735.04. The receiver is an officer of the court and is appointed for the benefit of all the creditors of the property subject to the receivership. The

receiver gets paid, not by the creditor who requested his appointment, but out of the assets of the receivership. When a court authorizes a receiver to take action, the presumption is that the receiver will be compensated for that action out of the assets of the estate. Therefore, the actions that he takes should have the potential to benefit the estate, that is, the property that is being foreclosed, and thus ultimately to benefit the lienholders of that property.

 In this case, there is no potential benefit to the estate or the property being foreclosed. The receiver is not representing the tenants in this case; the tenants are not creditors of the property in this receivership.

 Similarly, the receiver is not a creditor of the bankruptcy estate. Only a creditor may file a claim against a bankruptcy estate. Section 501(a), Title 11, U.S.Code provides that "[a] creditor * * * may file a proof of claim." A creditor is defined as an "entity that has a claim *against the debtor* that arose at the time of or before the order for relief[2] concerning the debtor." (Emphasis added.) Section 101(9), Title 11, U.S.Code. A claim is defined as "a right to payment." Section 101(4), Title 11, U.S.Code. While the receiver might possibly be allowed a claim in the bankruptcy proceeding for damages to the property that DPLP caused, he cannot make a claim against the bankruptcy estate for damages that a tenant caused; such a claim would be against the tenant, not against the landlord. Likewise, the tenant is entitled to make a claim in the bankruptcy proceeding for the return of a security deposit, but does not have a claim against the receiver.

 Similarly, the receiver has no claim against the general partners of DPLP for the return of the security deposits, for the same reasons that he has no claim against the bankruptcy estate. The general partners have no liability *to the property* for the security deposits, and therefore have no liability to the receiver. Further, the partners and the partnership have no individual liability to Castlebrook because the mortgage was a non-recourse mortgage.

DPLP cites R.C. 2329.09 for the proposition that a creditor may not pursue an individual partner to satisfy a partnership obligation until the creditor has established that there are insufficient partnership assets to satisfy the debt. However, R.C. 2329.09 deals only with execution on judgments that have been rendered against the partnership and does not address the issue of whether

---

2. In an involuntary case, the order of relief is entered no sooner than twenty days after the date of service of the summons and involuntary petition on the debtor in order to allow the debtor or the non-petitioning general partners time to contest the petition. Fed.R.Bankr.P. 1011.

individual partners can be held liable for a partnership debt. That issue is addressed by R.C. 1775.14, which provides as follows:

"Subject to section 1339.65 of the Revised Code, all partners are liable as follows:

"(A) Jointly and severally for everything chargeable to the partnership under sections 1775.12 and 1775.13 of the Revised Code. * * *

"(B) Jointly for all other debts and obligations of the partnership, but any partner may enter into a separate obligation to perform a partnership contact."

R.C. 1775.12 and 1775.13 provide as follows:

"Where loss or injury is caused to any person not a partner in the partnership or any penalty is incurred, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his partners, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." R.C. 1775.12.

"The partnership is bound to make good the loss:

"(A) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it;

"(B) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership." R.C. 1775.13.

Thus, in a situation where it is alleged and proven that the partnership wrongfully dissipated funds that belong to the tenants, the partners would be jointly and severally liable to the tenants. R.C. 1775.13(B); R.C. 1775.14(A). However, because the receiver has no interest in the tenants' security deposits and is not a representative of the tenants, the receiver is not the proper party to bring such an action.

## F. Conclusion

The trial court erred as a matter of law when it authorized the receiver to take action against the bankruptcy estate and the general partners of DPLP. Tenants' security deposits do not touch and concern the land and are not "respecting the property" that is the subject of the foreclosure action. The receiver therefore has no standing to pursue the partnership and the general partners to recover the missing security deposits.

DPLP's sole assignment of error is sustained.

## IV

DPLP's sole assignment of error having been sustained, the order of the trial court authorizing the receiver to proceed against DPLP and its general partners for the return of the tenants' security deposits is reversed and vacated.

*Judgment reversed*
*and order vacated.*

WOLFF, J., concurs.

WILSON, J., dissents.