DECISION AND JUDGMENT ENTRY
This is an appeal from the decision of the Vinton County Court which denied the motions to dismiss filed by Defendants-Appellants Timothy James, Marlin J. Landrum, Mark A. Nichols, Micky L. Kincaid, and Earl C. Wellington, in their respective cases. Consequently, the trial court held that appellants were guilty of exceeding the allowable wheel-load limit permitted by R.C. 5577.04. Pursuant to R.C. 5577.99, appellants were each fined a sum based on the amount their vehicles exceeded the weight limitations imposed by R.C. 5577.04.
Appellants argue that the trial court erred in denying appellants' motions to dismiss because R.C. 5577.04 was unconstitutionally enforced against them.
We find appellants' argument to be without merit and affirm the judgments of the trial court.
 STATEMENT OF THE CASE AND FACTS
The motions and entries relevant to this appeal, filed in the court below, are virtually identical in regard to each appellant. Likewise, the briefs filed by appellants and appellee with this Court are virtually identical. As these cases for our purposes are factually indistinguishable, and involve the same questions of law, we will consider them conjointly.[1] See, e.g., State ex rel. Bryant v. AkronMetropolitan Park Dist. for Summit County (1929), 120 Ohio St. 464,166 N.E. 407, affirmed (1930), 281 U.S. 74, 50 S.Ct. 228; accord Thomasv. Board of Com'rs of Butler County (1923), 28 Ohio App. 8, 162 N.E. 430; 5 Ohio Jurisprudence 3d (1999) 130, Consolidation of Causes; Joint Hearings, Section 409 ("Courts of review may * * * without consolidatingcases, hear and determine two or more of them together for reasons of convenience * * *." (Emphasis added.)).
Defendants-Appellants Timothy James, Marlin J. Landrum, Mark A. Nichols, Micky L. Kincaid, and Earl C. Wellington are all commercial drivers of tractor trailers who were issued citations by the Ohio State Highway Patrol for exceeding the allowable wheel load permitted by R.C.5577.04.[2]
We note that appellants concede that their tractor-trailers exceeded the allowable wheel load permitted by R.C. 5577.04.[3]
On or about July 6, 2000, appellants filed, inter alia, separate, identical motions with the trial court to dismiss the cases "on the grounds [sic] that [R.C. 5577.04] as enforced violates the Equal Protection clause of the 14th Amendment to the United States Constitution and Article I Section 2 of the Ohio Constitution."
On August 8, 2000, the trial court held a hearing on appellants' motions.
On or about September 21, 2000, the trial court issued its decisions denying appellants' motions to dismiss. In separate, identical entries, the trial court explained that, "[b]ased upon the small amount of [evidence] presented, the court finds that [appellants have] failed to show a prima facie case that others similarly situated have not generally been proceeded against although guilty of the same conduct, and that [appellants were] purposely and intentionally discriminated against upon [sic] an unjustifiable standard." Consequently, the trial court found that appellants were guilty of violating R.C. 5577.04.
On or about October 12, 2000, the trial court issued separate sentencing entries, fining each appellant, pursuant to R.C. 5577.99, a sum based on the amount their vehicles exceeded the weight requirements and limitations imposed by R.C. 5577.04.[4]
Appellants each timely filed a separate, identical appeal, assigning the following identical error for our review.
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS BASED UPON A VIOLATION OF THE EQUAL PROTECTION GUARANTEE CONTAINED IN THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION.
 ANALYSIS
The parties are in agreement that the sole issue to be resolved by this Court is whether the trial court erred in denying appellants'
motions to dismiss because R.C. 5577.04 was unconstitutionally enforced against them.
The appropriate standard for reviewing the trial court's denial of appellants' motions to dismiss is de novo. "In general, an appellate court will defer to a trial court's factual findings, but must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case." State v. Fleming (Apr. 25, 1997), Portage App. No. 96-P-0210, unreported, 1997 Ohio App. LEXIS 1701 (Overruling State v. Mrus (1991), 71 Ohio App.3d 828, 595 N.E.2d 460, which erroneously held that, "[u]pon review of a motion to dismiss, this court's standard of review is whether the trial court abused its discretion."); accord State v. Williams (1994), 94 Ohio App.3d 538,641 N.E.2d 239.
Accordingly, we must defer to the trial court's findings of fact while independently determining whether it correctly applied the substantive constitutional law to these facts in reaching its decision. See, generally, Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership
(1992), 78 Ohio App.3d 340, 604 N.E.2d 808 ("A trial court's purely legal determination will not be given the deference that is properly accorded to the trial court with regard to those determinations that are within its discretion."); Whiteside, Ohio Appellate Practice (2001 Ed.) 288, Standards of Review (explaining that "no court is vested with discretion to determine the law").
Generally, an offender cannot excuse his or her conduct by showing that someone else, equally guilty, was not prosecuted. See Maloney v. Maxwell
(1964), 174 Ohio St. 84, 186 N.E.2d 728 ("So long as a statute is equally applicable to members of a given class, the fact that there is a lack of diligence in enforcement of the statute * * * does not constitute a denial of equal protection * * *. In other words, equal protection does not entail uniform enforcement."); accord Oyler v. Boles (1962),368 U.S. 448, 456, 82 S.Ct. 501, 511; see 16A Corpus Juris Secundum (1984) 522, Constitutional Law, Section 563. However, under the appropriate circumstances, "[d]iscrimination in the enforcement of a criminal statute may constitute an equal protection violation." State v.Jones (1983), 13 Ohio App.3d 65, 67, 468 N.E.2d 158, 160.
The Supreme Court of Ohio, in State v. Flynt (1980), 63 Ohio St.2d 132,407 N.E.2d 15, applied the test used by federal courts to determine whether the enforcement of a criminal statute constitutes an equal protection violation.
 To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."
Id. at 132, 407 N.E.2d at 15, quoting United States v. Berrios (C.A.2, 1974), 501 F.2d 1207, 1211.
This two-pronged test has been recognized by numerous courts. SeeUnited States v. Legget Platt, Inc. (C.A.6, 1976), 542 F.2d 655, 658, certiorari denied (1977), 430 U.S. 945 (1977); United States v. Murdock
(C.A.5, 1977), 548 F.2d 599, 600; United States v. Ojala (C.A.8, 1976),544 F.2d 940, 943; United States v. Bourque (C.A.1, 1976), 541 F.2d 290,292-293; United States v. Peskin (C.A.7, 1975), 527 F.2d 71, 86, certiorari denied (1976), 429 U.S. 818; United States v. Scott (C.A.9, 1975), 521 F.2d 1188, 1195, certiorari denied (1976), 424 U.S. 955; see, also, Ah Sin v. Wittman (1905), 198 U.S. 500, 25 S.Ct. 756; Batson v.Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712; Hunter v. Underwood
(1985), 471 U.S. 222, 105 S.Ct. 1916 (explaining that, to establish a discriminatory effect, the claimant must show that similarly situated individuals were not prosecuted).
Accordingly, to determine whether the trial court erred in denying appellants' motions to dismiss, we must determine: (1) whether appellants established that others similarly situated have not been prosecuted; and (2) whether appellants' prosecution was the result of invidious discrimination. See Whitehall v. Moling (1987), 40 Ohio App.3d 66,532 N.E.2d 184.
In their briefs to this Court, appellants argue the following.
 The Ohio Legislature has chosen to create two classifications of the load limits in Ohio. One classification is evidenced in [R.C. 5577.04] prohibits [sic] trucks from carrying more than 80,000 pounds gross weight or a lesser amount as provided by the so called [sic] "Inner Bridge section." The legislature has also delegated to the Ohio Department of Transportation the right to exempt vehicles from the steel industry and vehicles to come into Ohio to go to the Toledo Port area from Michigan * * *. In looking at the distinction between the two classes of overloaded trucks there appears to be no rational basis for making a distinction except for pearly [sic] economic reasons.
Appellants' argument fails both prongs of the Flynt test. We begin with the first prong, whether appellants produced "credible evidence that similarly situated defendants * * * could have been prosecuted, but were not." United States v. Armstrong (1996), 517 U.S. 456, 463,116 S.Ct. 1480, 1190; accord Wade v. United States (1992), 504 U.S. 181,112 S.Ct. 1840.
Appellants point to the practice of the Ohio Department of Transportation (ODOT) of exempting certain carriers "from the steel industry" and those that "come into Ohio to go to the Toledo Port area from Michigan" from R.C. 5577.04. Such carriers are plainly not similarly situated to appellants.
First, appellants have presented no evidence that they were employed within the steel industry or that their destination was the Toledo Port area. Rather, the record indicates only that appellants were hauling loads in excess of the statutory limits nothing more. Thus, purely on a commonsensical level, appellants are not similarly situated to those that are exempted from prosecution under this statute.
Second, those that were exempted from prosecution were not arbitrarily granted free reign of Ohio's thoroughfares. Rather, they had to qualify for permits that entitled them only to limited use of certain Ohio roads.
Appellee submitted into evidence ODOT's "Office of Highway Management, Special Hauling Permit Section" (Operational Guide).
The Operational Guide, in a section entitled "Permit Limitations and Conditions," provides the following.
 It is not the intent of [ODOT] to indiscriminately grant permits for the movement of vehicles and/or loads exceeding the specified weights and dimensions prescribed in the Ohio Revised Code. The issuance of permits is generally limited to those vehicles and/or loads which cannot reasonably be divided, dismantled, reduced, or otherwise rearranged to conform to legal dimensions and/or weights as provided by law.
Further, the Operational Guide provides specific instructions for granting permits to carriers of steel coil what appellants are evidently referring to as carriers "from the steel industry" and carriers destined for the Toledo Port Area.
The guidelines for carriers of steel coil are as follows.
 Single trip or continuing type permits may be issued for a legal dimensional overweight vehicle transporting one or two coils of steel. Steel shipments covered under these permits must: (1) originate from an Ohio steel manufacturing or steel processor maintaining an agreement on file with the Special Hauling Permit Section, or; (2) Shipments originating outside the state of Ohio must be legal/permitted in the bordering state. All shipments originating outside the state of Ohio will be assigned the most direct route to the nearest truck weight enforcement station for inspection of permit compliance.
The guidelines for carriers bound for the Toledo Port Area are as follows.
 Continuing type permits (90 or 365 days) may be issued to allow a vehicle to make multiple moves between the Michigan/Ohio state line and various port and processing facilities in the Toledo area hauling various commodities at Michigan legal weights * * * and includes the use of load equalizing variable load suspension axles. Permits from local officials may be required. Each power unit and/or different vehicle configuration will require it's [sic] own permit.
See, generally, Ohio Adm. Code 5501:2-1-01 (defining the various kinds of permits that may be granted for "the movement of overweight and overdimension vehicle[s]").
As we discussed earlier, there is nothing in the record indicating that appellants applied for such a permit. Nor is there evidence in the record that appellants were carrying steel coils or hauling loads between Michigan and Ohio bound for the Toledo Port Area. Further, there is no evidence in the record that appellants were hauling indivisible loads. Rather, it appears that appellants were hauling readily divisible loadsi.e., coal and limestone on routes apart from those described in the Operational Guide pertaining to carriers bound for the Toledo Port Area. Thus, it cannot be said by any definitional stretch of the term "similarly situated defendants" that appellants were similarly situated to those carriers that obtained permits pursuant to the Operational Guide to carry steel coil or haul loads between Michigan and Ohio bound for the Toledo Port Area, and we so find.
Nevertheless, assuming, arguendo, that appellants satisfied the first prong of the Flynt test, we will briefly address the second prong: whether appellants' prosecution was the result of invidious discrimination.
As the foregoing discussion evidences, those that obtain permits to carry overweight loads are not accorded such an exemption arbitrarily. Rather, they must satisfy particular criteria as set forth in ODOT's Operational Guide before they will be granted such exemption from the weight limits imposed by R.C. 5577.04.
Clearly, the legislative intent behind R.C. 5577.04 is to allow effective enforcement of vehicle-load limitations for the purpose of controlling road damage and safety hazards. See, e.g., State v. Shepherd
(1980), 61 Ohio St.2d 328, 401 N.E.2d 934; Union Sand Supply Corp. v.Fairport (1961), 172 Ohio St. 387, 176 N.E.2d 224; State v. Trinkle (Feb. 9, 1990), Lucas App. No. L-88-379, unreported, 1990 Ohio App. LEXIS 438. The exceptions that ODOT permits to R.C. 5577.04 relate to practicality: loads that are either indivisible, or are hauled between Michigan and Ohio, bound only for the Toledo Port Area.
Accordingly, we find appellee has provided a rational basis to justify the alleged disparity in prosecution under R.C. 5577.04. See, generally,City of Cleveland v. Trzebuckowski (1999), 85 Ohio St.3d 524,709 N.E.2d 1148 (explaining that, for non-protected classifications, and cases that do not involve fundamental rights, the appropriate level of scrutiny is rational-basis review the most deferential standard of review); accord Gregory v. Ashcroft (1991), 501 U.S. 452,111 S.Ct. 2395; Roseman v. Firemen Policemen's Death Benefit Fund (1993),66 Ohio St.3d 443, 613 N.E.2d 574. We see no need to address appellants' argument further.
Therefore, in deferring to the trial court's factual findings, we independently find that the trial court correctly applied the substantive constitutional law. See Castlebrook, Ltd. v. Dayton Properties Ltd.Partnership, 78 Ohio App.3d at 346, 604 N.E.2d at 808. Accordingly, we find that the trial court did not err in denying appellants' motions to dismiss because appellants failed to establish a prima facie case for the discriminatory enforcement of R.C. 5577.04.
Each appellant's assignment of error is OVERRULED.
 CONCLUSION
For the foregoing reasons, we OVERRULE each appellant's assignment of error and AFFIRM the judgments of the Vinton County Court.
JUDGMENT ENTRY
It is ordered that the JUDGMENTS BE AFFIRMED and that appellee recover of appellants costs herein taxed.
This Court finds that there were reasonable grounds for these appeals.
It is ordered that a special mandate issue out of this Court directing the VINTON County Court, to carry these judgments into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellants to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellants to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such appeal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.
 ________________________ David T. Evans, Judge
[1] The individual appeals of appellants are numbered as follows: Appellant James, 00CA546; Appellant Landrum, 00CA547; Appellant Nichols, 00CA548; Appellant Kincaid, 00CA549; Appellant James, 00CA550; Appellant Wellington, 00CA551. Appellant James' name appears twice because he was twice charged for violating this same statute.
[2] R.C. 5577.04, in relevant part, provides the following. "The maximum wheel load of any one wheel of any vehicle, trackless trolley, load, object, or structure operated or moved upon improved public highways, streets, bridges, or culverts shall not exceed six hundred fifty pounds per inch width of pneumatic tire, measured as prescribed by [R.C. 5577.03]." R.C. 5577.04(A).
[3] Appellants exceeded the weight limit prescribed by R.C. 5507.04 by the following amounts: Appellant James, 42,950 pounds; Appellant Landrum, 42,450 pounds; Appellant Nichols, 39,450 pounds; Appellant Kincaid, 21,550 pounds; Appellant James, 19,900; Appellant Wellington, 43,450 pounds. Again, Appellant James' name appears twice because he was twice charged for violating this same statute.
[4] Pursuant to the statutory schedule set out in R.C. 5577.99(B), appellants were fined as follows: Appellant James, $1,448.50; Appellant Landrum, $1,427.50; Appellant Nichols, $1,343.50; Appellant Kincaid, $806.50; Appellant James, $757; Appellant Wellington, $1,463.50. Again, Appellant James' name appears twice because he was twice charged for violating this same statute.