[Cite as *Griffith v. Aultman Hosp.*, 2017-Ohio-8293.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GENE'A GRIFFITH, EXECUTRIX FOR THE ESTATE OF HOWARD E. GRIFFITH, DECEASED | JUDGES: Hon. W. Scott Gwin, P.J. Hon. William B. Hoffman, J. Hon. Earle E. Wise, Jr., J. |
| Plaintiff-Appellant | Case No. 2017CA0004 |
| -vs- | |
| AULTMAN HOSPITAL | O P I N I O N |
| Defendant-Appellee | |


CHARACTER OF PROCEEDING:       Appeal from the Stark County Court of
                               Common Pleas, Case No. 2013CV00487


JUDGMENT:                      Reversed and Remanded

DATE OF JUDGMENT ENTRY:        October 23, 2017

APPEARANCES:

For Appellant                  For Appellee

LEE E. PLAKAS                  RICHARD S. MILLIGAN
DAVID L. DINGWELL              Milligan Pusateri Co., LPA
MEGAN J. FRANTZ OLDHAM         4684 Douglas Circle NW - P.O. Box 35459
COLLIN S. WISE                 Canton, Ohio 44735-5459
Tzangas/Plakas/Mannos/LTD
220 Market Avenue South
Eighth Floor
Canton, Ohio 44702

*Hoffman, J.*

{¶1} Plaintiff-appellant Gene'a Griffith, Executrix for the Estate of Howard E. Griffith, Deceased, appeals the December 20, 2016 Judgment Entry entered by the Stark County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee Aultman Hospital, and denied her motion to compel.

STATEMENT OF THE FACTS AND CASE

{¶2} Howard E. Griffith ("Decedent") underwent surgery at Aultman Hospital on May 2, 2012.  Two days later, after being transferred from intensive care to a step-down unit, Decedent developed intermittent atrial fibrillation and was placed on continuous cardiac monitoring.

{¶3} Around 4 a.m. on May 6, 2012, a nurse in the step-down unit assessed Decedent and found he was doing well. Approximately 45 minutes later, an x-ray technician found Decedent in his bed with his gown ripped off, the cardiac monitor no longer attached to his body, his central line lying on the floor, and his chest tube disconnected. Decedent was unresponsive and did not have a heartbeat. Medical personnel resuscitated him and moved him to the intensive care unit. However, Decedent had suffered severe brain damage and, after he made no neurological improvement, his family decided to remove him from life support on May 7, 2012. Howard died approximately nine hours later on May 8, 2012.

{¶4} Griffith requested a copy of Decedent's complete medical record on July 24, 2012. Aultman provided some documents in response to this request.  After Griffith sent a second written request on October 17, 2012, Aultman produced the medical record for

the period May 2, through 8, 2012, which was stored in the medical records department. On December 12, 2012, Griffith's representative made an in-person request and was permitted to review what was represented to her as Decedent's complete medical record. Griffith made an additional written request for Decedent's medical record. Aultman again produced Decedent's medical record which was maintained in the medical records department.

{¶5}    Griffith filed the instant action on February 12, 2013, pursuant to R.C. 3701.74 and 2317.48, to compel Aultman to produce Decedent's complete medical record.   In her complaint, Griffith alleged, in part, Aultman had failed to produce any monitoring strips or nursing records from Decedent's hospital stay.  On March 8, 2013, Aultman filed an Answer, asserting it had provided Griffith with Decedent's complete medical record on February 28, 2013.

{¶6}    Griffith served Aultman with requests for admissions and interrogatories. In response, Aultman admitted, prior to filing the action, it had failed to produce Decedent's "entire and complete medical record in response" to each of Griffith's medical record requests. In the answer to interrogatories, Jennifer Reagan–Nichols, the director of medical records and transcription at Aultman, verified Aultman had produced Decedent's entire medical record after Griffith filed the action. Contemporaneously with the answer to interrogatories, Aultman produced hard copies of cardiac-monitoring data from May 6, 2012, "as responsive documents from the visit that are not part of the medical record."

{¶7}    Griffith deposed Reagan–Nichols on March 11, 2013. During the deposition, Reagan–Nichols testified Aultman had produced Decedent's cardiac-rhythm strips from May 6, 2012, covering 4:00 a.m. to 4:51 a.m., in response to the request for documents.

Reagan–Nichols further testified, while monitoring strips for a patient which are received by her department would be made part of the medical record, she explained Decedent's printouts were not part of his medical record because the nursing staff had not provided them to the medical records department.  She did not know who directed the nurses not to print Decedent's data.

{¶8}   On March 14, 2013, Aultman filed a motion for summary judgment supported by the sworn interrogatory answers of Reagan–Nichols, in which she indicated a complete copy of Decedent's medical chart had been provided to Griffith.  Griffith filed a memorandum in opposition, and a Civ.R. 56(F) motion to conduct additional discovery.

{¶9}   After Reagan–Nichols submitted an errata sheet to correct some of her deposition testimony, the trial court permitted Griffith to take a second deposition of Reagan–Nichols. During her second deposition, Reagan–Nichols indicated Bates Numbers 655 to 707 were not considered part of Decedent's medical record because they were never provided to the medical records department. Reagan–Nichols testified Bates Numbers 655 to 707 had been printed at the direction of Aultman's risk management department and stored by that department. She explained, if a record or document is not given to the medical records department, that record or document is not made part of the patient's medical record even if another part of the hospital may have a copy.  Reagan–Nichols further testified she did not know if the risk management department had any other records for Decedent which had not been provided to Griffith.

{¶10}  The parties filed supplemental briefs. A week before filing its supplemental brief, Aultman provided Griffith with Bates Number 708, which evidenced a cardiologist

had confirmed Decedent's ECG was abnormal and Decedent needed to be on electronic monitoring equipment.

**{¶11}** On June 28, 2013, the trial court conducted a hearing on Aultman's motion for summary judgment. Via Judgment Entry filed on the same day, the trial court granted summary judgment in favor of Aultman, finding Aultman had produced Decedent's medical record as defined by R.C. 3701.74(A)(8).

**{¶12}** On appeal, this Court affirmed the trial court's judgment, holding "the medical record consists of what was maintained by the medical records department and information that the provider decides not to maintain is not part of the medical record." *Griffith v. Aultman Hosp.,* 5th Dist. Stark No.2013CA00142, 2014–Ohio–1218, ¶ 22. We further noted, "Documents kept by any other department, including risk management, 'do not meet the definition of a medical record because they were not "maintained" by the medical records department'. *Id.* at ¶ 30.

**{¶13}** The Ohio Supreme Court accepted jurisdiction on appeal by Griffith to consider the definition of "medical record" as the term is used in R.C. 3701.74.[1] *Griffith v. Aultman Hosp.,* 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196. The *Griffith* Court disagreed with this Court's reasoning, and held "the physical location of patient data is not relevant to the determination whether that data qualifies as a medical record under R.C. 3701.74(A)(8). Rather, the definition focuses on whether a healthcare provider made a decision to keep data that was generated in the process of the patient's healthcare treatment and pertains to the patient's medical history, diagnosis, prognosis, or medical

---

[1] The underlying medical negligence/wrongful death claim against Aultman was settled prior to the Ohio Supreme Court's rendering its decision in *Griffith*, supra.

condition." *Id.* at ¶ 5. The Supreme Court reversed and remanded the matter to the trial court.

**{¶14}** Upon remand, the trial court permitted the parties to engage in "limited discovery", and scheduled supplemental briefing and oral arguments on Aultman's motion for summary judgment.  Griffith propounded her third set of written discovery upon Aultman, which included an interrogatory inquiring whether "[w]ithin the definition of "medical record" as clarified by The Supreme Court of Ohio in *Griffith v. Aultman Hosp.*, Slip Opinion No. 2016-Ohio-1138 * * *any page or part of any  medical record, office record, or hospital chart pertaining to your care and treatment of Howard Griffith from and including May 2, 2012 to May 8, 2012 has been destroyed, modified, replaced, damaged, or altered in any respect subsequent to the initial preparation, and whether a copy of the complete medical record has been provided to Plaintiff or their counsel".  Aultman objected, noting the interrogatory was unclear, and added the "interrogatory seeks information not relevant to any issue in the case and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving objection, see the medical record which is complete and has been provided.  See Aultman's answer to interrogatory no. 2 from plaintiff's first set of interrogatories in this case."

**{¶15}** Interrogatory No. 2 from Griffith's first set of interrogatories read:

> State whether, to Defendant's knowledge, any page or part of any medical record, office record, or hospital chart pertaining to your care and treatment of

Howard Griffith from and including May 2, 2012 to May 8, 2012 has been destroyed, modified, replaced, damaged or altered in any respect subsequent to the initial preparation, and whether a copy of the complete medical record has been provided to Plaintiff or their counsel.

{¶16} Aultman answered:

Objection. Interrogatory consists of two parts. Without waiving the foregoing objection:

1. With the exception of routine processing, no part of the medical record maintained by Aultman Hospital has been altered or destroyed.

2. A complete copy of the chart is provided in response to the request for production of documents.

{¶17} Griffith also deposed Cathy Rainieri from Aultman's risk management department. During the course of Rainieri's deposition, counsel for Aultman instructed the witness not to answer the following questions:

1. What medical records is Aultman's risk management department in possession of which have not been provided to Gene'a Griffith or her counsel?

2. Is any department within Aultman Hospital in possession of any medical records which have not been provided to Ms. Griffith or her counsel?

3. Without telling me what was said, was there any communication with counsel regarding Mr. Griffith's medical records in May, 2012?

Deposition of Cathy Rainieri at 18, 19, and 21.

{¶18} Following Rainieri's deposition, Griffith filed a motion to compel, seeking an order requiring Rainieri to answer the questions posed during her deposition, and to substantively respond to her written discovery requests.

{¶19} In its supplemental brief in support of its motion for summary judgment, Aultman's counsel asserted Aultman had produced the complete record and had "no other medical records of Howard Griffith that have not been produced, whether those records are maintained in the medical records department or elsewhere." June 27, 2016 Supplemental Brief at 4.

{¶20} The trial court conducted a hearing on Aultman's motion for summary judgment and Griffith's motion to compel on August 12, 2016. Following the hearing, Aultman filed the Affidavit of Cathy Rainieri, in which she averred any knowledge or information she had regarding Decedent was privileged, either as attorney-client privilege, or as work product.

{¶21} Via Judgment Entry filed December 20, 2016, the trial court denied Griffith's motion to compel, finding:

Upon review of the issues presented by the plaintiff's motion to compel, the Court finds that the information has been provided to the plaintiff and/or is covered by recognized privilege. Further, the Court finds, under the particular facts of this case, that no exception to such privilege applies. *Id.* at 2.

**{¶22}** In the same judgment entry, the trial court granted summary judgment in favor of Aultman, finding:

Upon review of such evidence and consideration of the arguments presented, the Court finds that the defendant has produced the entire "medical record" of Howard E. Griffith as defined by R.C. 3701.74(A)(8) and by the Supreme Court in *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138. *Id.* at 3.

**{¶23}** It is from this judgment entry Griffith appeals, raising the following assignments of error:

1. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER AULTMAN HAS PRODUCED MR. GRIFFITH'S ENTIRE MEDICAL RECORD FROM HIS MAY 2, 2012 ADMISSION BECAUSE 1) NO CREDIBLE SOURCE ATTESTED OR VERIFIED THAT

APPELLANT WAS PROVIDED ALL OF MR. GRIFFITH'S MEDICAL RECORDS, 2) THE EVIDENCE IS THAT ADDITIONAL MEDICAL RECORDS EXIST WHICH HAVE NOT BEEN PRODUCED, AND 3) MEDICAL RECORDS HAVE APPEARED ON TWO OCCASIONS AFTER APPELLEE FILED FOR SUMMARY JUDGMENT WITHOUT ANY EXPLANATION AS TO WHERE THEY CAME FROM WHY THEY WERE JUST BEING PRODUCED, AND WHAT OTHER RECORDS WERE WITH THEM.

2. THE TRIAL COURT ERRED AS A MATTER OF LAW DENYING PLAINTIFF'S MOTION TO COMPEL BECAUSE THE SOUGHT INFORMATION WAS NEITHER "PROVIDED TO THE PLAINTIFF" NOR "COVERED BY A RECOGNIZED PRIVILEGE."  ASSUMING ARGUENDO THAT WORK PRODUCT PRIVILEGE APPLIED, GRIFFITH HAS GOOD CAUSE FOR SUCH INFORMATION.

I

**{¶24}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

**{¶25}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2)

the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267.

{¶26} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265. The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293, 662 N.E.2d 264: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed

in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 309 N.E.2d 924.

**{¶27}** Griffith contends summary judgment was inappropriate because genuine issues of material fact exist as to whether Aultman has produced Decedent's entire medical record. We agree.

**{¶28}** Upon remand from the Ohio Supreme Court, the trial court permitted the parties to engage in "limited discovery". Griffith propounded her third set of written discovery upon Aultman, which included the following interrogatory:

INTERROGATORY NO. 2:

Within the definition of "medical record" as clarified by The Supreme Court of Ohio in *Griffith v. Aultman Hosp.*, Slip Opinion No. 2016-Ohio-1138, state whether, to Defendant's knowledge any page or part of any medical record, office record, or hospital chart pertaining to your care and treatment of Howard Griffith from and including May 2, 2012 to May 8, 2012 has been destroyed, modified, replaced, damaged, or altered in any respect subsequent to the initial preparation, and whether a copy of the complete medical record has been provided to Plaintiff or their counsel.

**{¶29}** Aultman objected, responding:

* * *  Interrogatory is unclear.  In addition, this interrogatory seeks information not relevant to any issue in the case and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving objection, see the medical record which is complete and has been provided.  See Aultman's answer to interrogatory no. 2 from plaintiff's first set of interrogatories in this case.

**{¶30}** Interrogatory No. 2 from Griffith's first set of interrogatories and Interrogatory No. 2 from Griffith's third set of interrogatories are identical except for the "Within the definition of 'medical record' as clarified by The Supreme Court of Ohio in *Griffith v. Aultman Hosp.*, Slip Opinion No. 2016-Ohio-1138" language.  See, Statement of the Facts and Case, supra.  Aultman's answer to Interrogatory No. 2 from the first set of interrogatories reads, as follows:

Objection.  Interrogatory consists of two parts.  Without waiving the foregoing objection:

1. With the exception of routine processing, no part of the medical record maintained by Aultman Hospital has been altered or destroyed.

2. A complete copy of the chart is provided in response to the request for production of documents.

{¶31} In considering "whether [Aultman] met its burden on a motion for summary judgment to show that there was no genuine issue of material fact that it produced [Decedent's] entire medical record", the Ohio Supreme Court found the record before it was "insufficient" to make such determination "because the proceedings below focused only on medical records kept in the hospital's medical-records department." *Griffith*, supra at para. 26 and 27. By relying upon its response to Interrogatory No. 2 from Griffith's first set of interrogatories in addressing Interrogatory No. 2 from Griffith's third set of interrogatories, we find Aultman has again failed to meet its burden to show there was no genuine issue of material facts it produced Decedent's entire medical record.

{¶32} Aultman objected to Interrogatory No. 2 both times, but each time proceeded to respond without directly answering the interrogatory.[2] In its first objection, Aultman claimed "with the exception of routine processing, no part of the medical record had been altered or destroyed.[3, 4] Aultman further claimed a copy of the complete "chart" was provided.

{¶33} We note Aultman's production of the complete "chart", does not necessarily equate to the production of the entire medical record. Significantly, Aultman's response was based on its contention only records it kept in its medical records department

---

[2] It seems procedurally awkward to object to the interrogatory, yet offer a response upon which Aultman then relies to support its motion for summary judgment.

[3] Aultman's insertion of the qualifying condition "with the exception of routine processing", presumes whatever it processes routinely cannot be considered a medical record – a presumption which is self-serving and better left for the trial court to decide, in camera.

[4] Aultman did not further state the medical record had not been "modified" or "replaced" as requested in the interrogatory. While we are not sure there is a theoretical difference, other than mere semantics, in those terms, arguably the response was incomplete.

qualified as discoverable medical records – a contention the Ohio Supreme Court rejected.

**{¶34}** Aultman's objection to Interrogatory No. 2 in the third set following remand from the Ohio Supreme Court, asserted the interrogatory was "unclear". Again, Aultman responded to the purportedly "unclear" interrogatory, claiming the complete medical record had been provided, incorporating by reference its response to Interrogatory No. 2 in the first set of interrogatories. By doing so, we find its purported response suffers from the same flaw the Ohio Supreme Court found wanting.

**{¶35}** Despite representing it had provided Decedent's entire medical record, Aultman subsequently produced additional pages of Decedent's medical record, to wit: Bates 708 and the nursing notes of Nurse Ginelle Breyer.

**{¶36}** Despite Aultman's counsel repeated assertions all discoverable medical records has been produced and provided, there is no Civ.R. 56 evidentiary material from an Aultman representative directly and definitely so stating, following the Ohio Supreme Court's clarification of what medical records include.

**{¶37}** Accordingly, we find the trial court erred in granting summary judgment in favor of Aultman.

**{¶38}** Griffith's first assignment of error is sustained.

II

**{¶39}** In her second assignment of error, Griffith asserts the trial court erred as a matter of law in denying her motion to compel. We agree.

**{¶40}** Because a trial court has broad discretion over discovery matters, a reviewing court reviews these rulings only for an abuse of discretion. *State ex rel. Duncan*

*v. Middlefield*, 120 Ohio St.3d 313, 2008–Ohio–6200, 898 N.E.2d 952, ¶ 27.  Accordingly, this Court will not reverse a trial court's decision on a motion to compel absent an abuse of discretion.  *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198.  However, where a trial court's order is based on a misconstruction of law, it is not appropriate for a reviewing court to use an abuse-of-discretion standard. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811–812. In determining pure questions of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law. *Id.*

**{¶41}** In her motion to compel, Griffith asked the trial court to require Cathie Rainieri to answer the questions posed to her at her deposition as well as natural follow-up questions.  Griffith also asked the trial court to order Aultman to substantively respond to her third set of interrogatories and requests for production of documents.

**{¶42}** At the commencement of Rainieri's deposition, Aultman objected to her being questioned "about any specific information about the Griffith matter" as "her only knowledge was gained in the context that would be privileged, either as attorney-client privilege or as work product." Deposition of Cathie Rainieri at 4.  The trial court conducted a hearing on the motion to compel on August 12, 2016.  Later, that afternoon, Aultman supplemented the record with Rainieri's affidavit.  Therein, Ranieri averred she worked "exclusively under the authority, direction, control and supervision of" Aultman's legal department; the risk management department "operates under the direction of Attorney Mark N. Rose", the senior vice president of legal affairs and system risk management at the hospital"; the risk management department "is responsible for investigating incidents

where there is a prospect of litigation"; and "under the direction of counsel, [she] undertook an investigation into the Griffith matter" and any "investigation or actions [she] took * * * were done in connection with my work as a risk manager, at the direction of counsel and in anticipation of and defense of litigation."  Affidavit of Cathy Rainieri at paras. 1, 2, 3, and 5.

{¶43} The trial court denied Griffith's motion to compel, finding "the information has been provided to the plaintiff and/or is covered by recognized privilege.  Further, the Court finds, under the particular facts of this case, that no exception to such privilege applies." December 20, 2016 Judgment Entry at 2.

{¶44} The main purpose behind the attorney-client privilege is to promote " 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Boone v. Vanliner Ins. Co.* (2201)*,* 91 Ohio St.3d 209, 210, 744 N.E.2d 154, fn. 2, quoting *Upjohn Co. v. United States* (1981)*,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584. On the other hand "[t]he purpose of the work-product doctrine is 'to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' " *Id.* quoting Civ.R. 26(A)(2). Although both the attorney-client privilege and the work-product doctrine might often apply to the same material, the protections do not overlap completely. *See, In re Election of Nov. 6, 1990 for the Office of Atty. Gen. of Ohio* (1991), 57 Ohio St.3d 614, 615, 567 N.E.2d 243.

{¶45} Ohio Courts have long recognized the protection against discovery of matters identified as "privileged" in Civ.R. 26(B)(1) is limited to those derived from a specific constitutional or statutory provision. *State ex rel. Grandview Hosp. & Med. Ctr. v.*

*Gorman*, 51 Ohio St.3d 94, 95, 554 N.E.2d 1297 (1990), citing *In re Story*, 159 Ohio St. 144, 147, 111 N.E.2d 385 (1953). Although not technically a privilege in the strict sense, the attorney work-product doctrine is frequently called a privilege in the popular sense. See, e.g., *United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55.

**{¶46}** Privileges are to be strictly construed and "[t]he party claiming the privilege has the burden of proving that the privilege applies to the requested information." *Giusti v. Akron Gen. Med. Ctr.,* 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, at ¶ 17. "The burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] * * *." *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 178, 358 N.E.2d 521, citing *In re Martin* (1943), 141 Ohio St. 87, 103, 47 N.E.2d 388.

**{¶47}** We find Aultman failed to meet its burden of establishing the attorney-client privilege applied to all the documents and information sought by Griffith. Decedent's medical record existed prior to the filing of the instant action. The attorney-client privilege cannot shield these documents and information from production merely because such was gathered and turned over to the risk management department. The underlying nature of this information was not transmuted once it was provided to the risk management department. We reject Aultman's summary claim any record gathered at the request of its legal litigation department is always protected by the attorney-client privilege.

**{¶48}** We further find the work product privilege does not extend to the information sought during Rainieri's deposition.

**{¶49}** Civ. R. 26(B) provides, in pertinent part:

(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (B)(5) of this rule, a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * *only upon a showing of good cause therefor.* A statement concerning the action or its subject matter previously given by the party seeking the statement may be obtained without showing good cause. A statement of a party is (a) a written statement signed or otherwise adopted or approved by the party, or (b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement which was made by the party and contemporaneously recorded. (Emphasis added).

**{¶50}** "[A] showing of good cause under Civ.R. 26(B)(3) requires demonstration of need for the materials—i.e., a showing that the materials, or the information they contain, are relevant and otherwise unavailable. The purpose of the work-product rule is '(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' Civ.R. 26(A). To that end, Civ.R. 26(B)(3) places a burden on the party seeking discovery to

demonstrate good cause for the sought-after materials." *Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, at ¶ 16.

{¶51} The deposition questions posed by Griffith to Rainieri sought factual information. This information is otherwise unavailable to Griffith because it is within the exclusive possession and knowledge of Aultman's risk management department.

{¶52} The trial court stated no exception to "such privilege" applies. While it is unclear whether the trial court was addressing communications between Aultman and its attorney ("attorney-client privilege") or the work-product privilege [or perhaps both], we find the public policy exception to the work-product doctrine would apply. That public policy is embodied in Civ.R. 26(B)(3) and R.C. 3701.74. The fact existent medical records were compiled into different data formats does not cause them to lose their underlying status as medical records.

{¶53} Based upon the foregoing, we find the trial court erred in denying Griffith's motion to compel.

{¶54} Griffith's second assignment of error is sustained.

{¶55} The judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with this Opinion and the law.

By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concur