JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Burt Slowbe ("father"), appeals the trial court's adoption of the magistrate's decision in this, the third appeal in this case. Plaintiff, Lynn Slowbe ("mother"), cross-appeals. This domestic relations case has a long and contentious history. For economy, we will include only those facts pertinent to the assignments of error which we will address.
 {¶ 2} When the parties were divorced on February 13, 1990, father was ordered to pay child support of $75.00 per week for their only child, a daughter (D.O.B. 4/6/82). Pursuant to mother's 1993 motion to modify support, father was ordered to pay child support of $250 per month. His sources of income included several pensions and social security disability payments. The court calculated the parents' incomes on the child support worksheet. First, the court determined that, without the social security payments, the parents had a combined annual income of $35,912.56 and that 75% of that was the father's income and 25% was the mother's. The court then calculated that, based on the statutory Basic Child Support Schedule, the father's annual obligation was $3,942.00. The magistrate, in his report, also noted that "the amount of child support due in this matter pursuant to the Basic Child Support Schedule and the * * * worksheet would be $0.00 when crediting the child's full Social Security benefit to the parties's combined child support obligation." Magistrate's decision, February 23, 1994 at 5. Nonetheless, the court ordered father to pay $3,000 annually, or $250 per month, from his non-Social Security income. The court reasoned, "[p]artial credit has been given to Defendant for the social security benefits of $543.00 per month, ($6,516.00 per year) which the minor child receives." The court then stated that deviation was warranted in this case because there was a significant disparity in the parents' incomes, part of father's income was tax free, and the father receives a significant benefit by sharing living expenses with his current spouse. Journal entry, February 27, 1995.
 {¶ 3} At the time the court made this ruling, father was in arrears in both his child support and his payment of the court-ordered share of the child's medical bills. When father qualified for social security disability, he received a lump sum payment to cover payments retroactive to the time he applied for coverage. Additionally, his daughter began receiving $543 per month in social security payments. She also received a lump sum for retroactive social security payments.
 {¶ 4} Because his daughter was now receiving more than the ordered amount in social security benefits, father then applied to the court for an adjustment in the amount of child support he had to pay. The court gave him credit for the social security payments but still deviated upward from $0.00 by $250 in child support. This court upheld that ruling in Slowbe I (Dec. 7, 1995), Cuyahoga App. No. 68739. In Slowbe I, this court also upheld the trial court's ruling that the lump sum the daughter had received from social security should be applied to satisfy the father's arrearages in his child support payments and share of the medical bills.
 {¶ 5} When this case was remanded to the lower court, father attempted to relitigate the child support issues, but failed to file a motion to modify child support. The trial court refused, therefore, to address the issue. That decision was upheld by this court in Slowbe II (Jan. 13, 2000), Cuyahoga App. No. 75520.
 {¶ 6} In 2000, the Ohio Supreme Court, in Williams v.Williams, (2000), 88 Ohio St.3d 441, ruled that social security disability payments should be fully credited toward the child support obligations of the social security recipient. In other words, the social security payment is to be deducted not from the total amount due from both parents but rather from the amount due from the parent receiving the social security disability. The Court did not rule, however, that the trial court could not require child support that deviated upward from the amount provided by social security. Several months after the daughter in the case at bar was emancipated, father moved the trial court for an amendment in its order asking it to change the source of his child support payments to only the monthly social security disability payments the daughter was receiving and to eliminate CSEA deductions from his pensions as a source of child support. He also requested the court to apply the social security payments his daughter had already received against all the past payments he had made and to refund him $36,613.44, the total amount of child support he had paid from his other earnings, since July 1991. In other words, he wanted the court to reduce the amount of child support the daughter received to the amount provided by social security. He also wanted the court to order a refund to him of the $36,613.44 deducted from his pensions by CSEA.[1]
 {¶ 7} The trial court found that it had jurisdiction only over the time period from 1997 to the daughter's emancipation on the date of her high school graduation in June 2000. It ruled that this court's rulings in Slowbe I and Slowbe II, which decided child support issues through 1997, were res judicata.
 {¶ 8} The court further found, however, that the $7,609.55 payments father had made through CSEA from the end of 1997 until the child's emancipation should be offset against father's support arrearages and unpaid medical bills for the child, which totaled $7,284.72. In effect, the court retroactively eliminated the father's payments from sources other than Social Security from 1997 until the child's emancipation. The court held that this offset resulted in a total satisfaction of the amount due to mother for arrearages and unpaid medical bills.
 {¶ 9} Father appealed the trial court's decision and mother cross-appealed. The specifics of their objections to the decision are delineated in their assignments of error. Father states two assignments of error. For his first assignment of error, he states:
The trial court committed prejudicial error when it failed to apply williams retroactively to appellant's child support obligations.
 {¶ 10} Father failed to raise this issue in his objections to the magistrate's report. Pursuant to Civ.R. 53(3)(d),[2] we will not address this assignment.
 {¶ 11} For his second assignment of error, father states:
The trial court committed prejudicial error when it failed to vacate the effects of prior voided orders.
 {¶ 12} Father has argued variations of this claim numerous times. In this appeal, his entire argument under this assignment of error states:
Appellant submits that he has been prejudiced throughout the long court of litigation in this court.
He has been held in contempt; he has had attorneys' fees awarded against him; and he has had other sanctions imposed on him as a result of entries issued with respect to the voided order of this court.
Appellant has no other recourse but to ask this court to rectify the effects of such prior orders and sanctions by order [sic] the trial court to vacate all such effects.
 {¶ 13} Nowhere does father cite which specific orders and sanctions in this voluminous record he is challenging. "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." App.R. 12(A)(1)(c)(2). Further, App.R. 16(A)(7) requires an appellant to support his arguments "with citations to the authorities, statutes, and parts of the record on which appellant relies." Father also fails to cite to any law to support his vague assertions. On the basis of App.R. 12 and 16, we decline to address this assignment of error.
 CROSS-APPELLANT'S ASSIGNMENTS OF ERROR {¶ 14} Wife states three cross-assignments of error, the first of which states:
The trial court erred and committed prejudicial error granting affirmative relief where appellant failed to properly invoke the court's continuing jurisdiction.
 {¶ 15} Mother claims that, because father failed to perfect service of his motion seeking the court to apply Williams v.Williams to this case, he is barred from relief. Civ.R. 75(J), which governs divorce proceedings, states in pertinent part: "The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6." Civ.R. 4(A) requires that process be served directly upon the party. Rather than serving mother, father mailed service of his motion to her attorney. Mother correctly notes that a trial court lacks jurisdiction over a motion to modify support if the nonmoving party is not personally served. Szymczak v. Szymczak (2000), 136 Ohio App.3d 706; Carson v. Carson (May 1, 1989), Brown App. No. CA88-06-008; Hansen v. Hansen (1985),21 Ohio App.3d 216, at 218.
 {¶ 16} Nonetheless, mother waived any jurisdictional defense she may have had by failing to raise this objection in her responsive pleading and actively participating in the proceedings. Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156. As the Eleventh District noted in a similar case, mother "voluntarily waived the defense of lack of jurisdiction and submitted herself to the court's jurisdiction by arguing the merits of appellee's motion. Under Civ.R. 12(H)(1) the defense of lack of jurisdiction, insufficiency of process, and insufficiency of service of process is waived `if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof.' In the present case, appellant did not raise the issue of insufficiency of service until March 21, 2002, after the court had already issued its ruling on the merits of appellee's motion." In re Seitz, Trumbull App. No. 2002-T-0097, 2003-Ohio-5218, ¶ 18. See, also, Ogletree v. Ogletree,
Montgomery App. No. 18674, 2002-Ohio-108; Darden v. Darden (May 2, 1996), Cuyahoga App. Nos. 69322 and 69453.
 {¶ 17} In the case at bar, not only did mother fail to raise this argument in her responsive pleading, her counsel did not mention a service problem until his closing argument on the second day of the hearing. Clearly, mother waived her jurisdictional argument by responding and by participating in two days of hearings before raising it.
 {¶ 18} Mother also argues Slowbe II precludes the trial court from retroactively applying Williams to the case at bar. Because she also raises this issue in subsequent assignments of error, we will address it later. Accordingly, mother's first cross-assignment of error is without merit.
 {¶ 19} For her second assignment of error, mother states:
The trial court erred and committed prejudicial error by retroactively modifying appellant's support arrearages.
 {¶ 20} Mother alleges that the trial court's action which modified the arrearage amount owed by father was in error because, first, father never filed a timely motion for modification, and, second, retroactive modification of arrearage amounts is prohibited by R.C. 3113.21(M)(3) and (4).[3]
 {¶ 21} Child support is governed by R.C. Chapter 3119. R.C.3119.05 states the factors the court considers in determining the parties' respective incomes. R.C. 3119.021 further provides a basic child support schedule to
 {¶ 22} be used by all courts and child support enforcement agencies when calculating the amount of child support to be paid pursuant to a child support order, unless the combined gross income of the parents is less than sixty-six hundred dollars or more than one hundred fifty thousand dollars * * *."
 {¶ 23} If the court deviates from this schedule pursuant to R.C. 3119.22, it must state its reasons from among those listed in R.C. 3119.23.
 {¶ 24} R.C. 3119.22 states in pertinent part,
 {¶ 25} the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.
 {¶ 26} The relevant reasons listed in R.C. 3119.23 are:
 {¶ 27} Special and unusual needs of the children;
 {¶ 28} Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
 {¶ 29} Other court-ordered payments;
 {¶ 30} Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
 {¶ 31} The obligor obtaining additional employment after a child support order is issued in order to support a second family;
 {¶ 32} The financial resources and the earning ability of the child;
 {¶ 33} Disparity in income between parties or households;
 {¶ 34} Benefits that either parent receives from remarriage or sharing living expenses with another person;
 {¶ 35} The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 {¶ 36} Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 {¶ 37} The relative financial resources, other assets and resources, and needs of each parent;
 {¶ 38} The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 {¶ 39} The physical and emotional condition and needs of the child;
 {¶ 40} The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 {¶ 41} The responsibility of each parent for the support of others;
 {¶ 42} Any other relevant factor.
 {¶ 43} An appellate court reviews child support issues under an abuse of discretion standard. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390. "The term `abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Further, "[t]he term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams, 62 Ohio St.2d 151, 157. This does not mean, however, that a reviewing court cannot correct a trial court's misinterpretation of the law:
 {¶ 44} * * * [W]here a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use an abuse of discretion standard. In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law.
 {¶ 45} Confusion has been engendered by an unfortunate choice of words when courts have said on occasion that an abuse of discretion connotes "more than an error of law." It would be more accurate to say that an abuse of discretion is "different from an error of law." A trial court's purely legal determination will not be given the deference that is properly accorded to the trial court with regard to those determinations that are within its discretion.
 {¶ 46} Castlebrook, Ltd. v. Dayton Properties (1992),78 Ohio App.3d 340, 346. In the case at bar, the trial court's interpretation of Williams constitutes a mistake of law.
 {¶ 47} The trial court was correct when it ruled that all social security/child support issues for the period prior to 1997 were res judicata because this court had ruled on them and father had not appealed that ruling. The trial court erred, however, in ruling that it had the jurisdiction to apply the Social Security payments to the arrearages for the amount the father owed. Father's motion to apply Williams was indeed a motion to modify. Because the motion to modify was not filed until after emancipation, the trial court was deprived of jurisdiction over the issue for the period covering late 1997 to the child's emancipation. Specifically, the court erred in retroactively eliminating the portion of child support taken from father's non-Social Security income after this court's 1997 decision but prior to his filing a motion for modification.
 {¶ 48} A court may not retroactively modify child support or arrearages, absent fraud. "Except as provided in section 3119.84
of the Revised Code, a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment." R.C. 3119.83. Further, the court may not modify future payments without a motion. Those changes become effective only from the time the motion is filed onward. R.C.3119.84 states: "A court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the courtsupport order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." Emphasis added.
 {¶ 49} The effect of Williams was to change who received credit for the Social Security payment. Prior to Williams, the courts were split on whether social security payments received by a child should be credited against both parents' obligation or only against the parent receiving the disability payments. The narrow issue addressed by the Court in Williams was, "`[s]hould a disabled parent's child support obligation be directly set off by Social Security payments received on behalf of a minor child, or should the joint child support obligation of both parties be reduced by the amount of the Social Security payments?'" Id. at 442. The Supreme Court ruled that only the disability recipient should receive full credit against that parent's personal obligation of child support.
 {¶ 50} Father mistakes the meaning of "full credit" as used in Williams. He believes that he should receive credit toward his entire child support obligation from the social security payment. The full credit referred to in Williams, however, is full credit for the amount paid by social security, not the full credit toward the amount owed by the obligor. The Williams
Court held that "a disabled parent is entitled to a full credit in his or her child support obligation for Social Security payments received by a minor child. Accordingly, appellant's child support obligation shall be set off by those Social Security payments received on Jessica's behalf. Since the amount of Social Security payments [the child] received exceeds what appellant owed, the trial court shall enter judgment reflecting that no child support is owed from the time she first received the Social Security benefits." Williams at 445. The court in the case at bar reached this same conclusion but then deviated upward above the amount provided by Social Security. Nothing inWilliams prevents the court from deviating upward above the amount paid by Social Security.
 {¶ 51} Generally, application of Social Security benefits toward a disabled parent's child support obligation is not considered a modification. Rather, it is considered a change merely in the source of payments. Williams at 444. In the case at bar, however, the court in 1993 explicitly deviated upward in the amount of support it ordered father should pay for the child. The court intentionally ordered father to pay $250 per month over and above the amount provided by social security. The court noted in its findings of fact which were incorporated from the magistrate's report, that if it were to credit both parents' statutory obligation with the social security payments the child received, "the amount of support due in this matter would be $0.00 per month when crediting the child's full Social Security benefit to the parties' combined child support obligation." 1993 Report of Referee with Notice at 5.
 {¶ 52} The court then proceeded, however, to give its reasons for requiring father to pay an amount which deviated from the statutorily determined support amount. When a court deviates upward or downward from the statutory amount, it must make one or more of the findings as required by R.C. 3119.23. The court noted the disparity in income between the parents, the fact that because of his remarriage father had no living expenses, and that father paid no income tax on his social security income whereas the mother's entire income was taxable. The court also noted in the magistrate's report it adopted that the child's expenses had increased since its last support order, that mother's expenses exceeded her income, and that for father "to provide the minor child with only the monthly Social Security benefit would not be in her best interests when her father has abundant resources available to him to provide for her needs." The court determined, therefore, that upward deviation was in the best interest of the child.
 {¶ 53} This court affirmed that decision in Slowbe I and the Supreme Court denied cert. This upward deviation, therefore, is res judicata and absent a motion to modify support, father is barred from appealing it. See Slowbe II. As noted above, nowhere in Williams does the court state that a trial court may not deviate upward in a case in which the parent receiving Social Security receives other income in addition to Social Security and the best interests of the child require it.
 {¶ 54} In the case at bar, the court tallied a total of $7,284.72 in arrearages for child support and medical expenses. It then determined that father had paid $7,609.55 through CSEA payments for the time period in question. The court then stated that "pursuant to Williams, this amount should be offset by child support which [mother] received through CSEA while the child was receiving benefits, resulting in total satisfaction of any sums due to [mother]." Magistrate's Decision at 3. Clearly, this order modifies the amount of support the child received.
 {¶ 55} Father here relies on a statement in Williams which stated that because the amount of the social security payment exceeded the amount of child support due, "no child support is owed from the time [the child] first received Social Security benefits." Id. at 445. The Williams case differs, however, in that "the disabled parent [had] no other source of income * * *." Id. at 444. Father had two additional sources of income, his state and local union disability pensions. Further, in its 1993 judgment entry, the court intentionally deviated upwards from the Social Security amount and gave valid reasons for doing so with full knowledge that it was exceeding the amount received from social security.
 {¶ 56} Father errs in his analysis, therefore, because the court in 1994 specifically ordered payments over and above the amount provided by Social Security. By retroactively applying the CSEA payments to the arreages in 2000, however, the court reduced the amount received by the child from the amount ordered by the court in 1993. This order constitutes a modification of the amount of child support. Because father never moved for a modification prior to the expiration of his child support obligation, the court lacked jurisdiction to grant any modification.
 {¶ 57} The court erred, therefore, when it held that it had the authority to modify the amount or application of support payments for the time period from December 19, 1997 through the child's graduation from high school on June 4, 2000. "Since no request was made to the court, the trial court is barred, by statute, from retroactively modifying appellee's support obligation during this time." Gilliam v. Delauder (2003),151 Ohio App.3d 640, ¶ 49. Accordingly, this assignment of error has merit.
 {¶ 58} For her third assignment of error, mother states:
The trial court erred and committed prejudicial error by applying the ohio supreme court's decision in Williams v.Williams (2000), 88 Ohio St.3d 441 retroactively.
 {¶ 59} Mother argues that because father did not file his motion for retroactive enforcement of Williams until after the daughter was emancipated, he is barred from obtaining relief. Because we have determined that Williams does not apply to the case at bar, this assignment of error is moot.
 {¶ 60} Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.
 {¶ 61} This cause is affirmed in part; reversed in part and remanded.
Kilbane, P.J., and Gallagher, J., concur.
It is, therefore, ordered that appellant and appellee share the costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] His motion implies that he considered this $36,613.44 to be an overpayment (because the amount paid by Social Security exceeded the amount which had been deducted from his pensions since the original child support order had been put into effect), rather than a refund based on the retroactive order.
[2] Civ.R. 53(3)(d) reads as follows: "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
[3] Chapter 31 of the Revised Code was reorganized and renumbered in 2001. These statutes are now R.C. 3119.83 and .84. The substance of the statutes is the same. Father's motion which is the subject of this appeal was filed in 2000, but the proceedings continued through the change in the statute.