PEAT, Appellee,

v.

UNIVERSITY HOSPITALS HEALTH SYSTEM BEDFORD
MEDICAL CENTER et al.; Kratz, Appellant.

[Cite as *Peat v. Univ. Hosp. Health Sys. Bedford Med.
Ctr.*, 159 Ohio App.3d 638, 2005-Ohio-395.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84472.

Decided Feb. 3, 2005.

Becker & Mishkind Co., L.P.A., David A. Kulwicki and Lawrence F. Peskin, for appellee.

Bonezzi, Switzer, Murphy & Politi, Steven J. Hupp and Bret C. Perry, for appellant.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Defendant-appellant, Dr. Daniel Kranitz, appeals the trial court's granting of the motion of plaintiff-appellee, David Peat, for a new trial. Finding merit to the appeal, we reverse.

{¶ 2} In 2002, Peat filed a medical malpractice action against Kranitz alleging negligence for his failure to order a CT scan and timely diagnose a brain abscess. During discovery, Peat deposed Kranitz's expert, Dr. Charles Eckerline.[1] Peat inquired about the publications listed on Eckerline's curriculum vitae, specifically the University of Kentucky, Department of Emergency Medicine, Evaluation and Treatment Guidelines ("Guidelines"). Eckerline claimed that the Guidelines were consistent with the current standard of care for evaluating and treating headaches. However, he stated that he did not rely on the Guidelines and did not find them authoritative.

{¶ 3} Prior to trial, Kranitz filed a motion in limine seeking to exclude all testimony regarding the Guidelines. Although the ruling is not in the record, the trial court apparently granted Kranitz's motion.

---

1. While the record indicates that Eckerline was deposed by Peat, the deposition transcript was never filed with the trial court. Therefore, any reference to Eckerline's deposition is taken from the parties' appellate briefs.

{¶ 4} The matter proceeded to a jury trial, at which Peat attempted to introduce the Guidelines for the purpose of impeaching Eckerline. Again, the trial court denied this request. The jury subsequently found in Kranitz's favor.

{¶ 5} Peat filed a motion for new trial, claiming that the trial court committed prejudicial error when it refused to allow him to impeach Eckerline with a learned treatise. The trial court granted Peat's motion and ordered a new trial.

{¶ 6} Kranitz appeals the trial court's decision, raising two assignments of error.

New Trial

{¶ 7} In his first assignment of error, Kranitz argues that the court's decision to grant a new trial was erroneous as a matter of law. He claims that the Guidelines were inadmissible for impeachment under Evid.R. 706.

{¶ 8} Civ. R. 59(A) states:

A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

* * *

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

{¶ 9} The parties have conflicting opinions as to which standard this court should apply in reviewing this matter. This court has held:

Under Ohio law, the standard of appellate review depends on the basis for the trial court's ruling on the motion for a new trial. Thus, "[w]here a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law." *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 376], 262 N.E.2d 685 paragraph two of the syllabus. By contrast, "[w]here a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court." Id., paragraph one of the syllabus.

*Powell v. Schiffauer* (Feb. 2, 1989), Cuyahoga App. No. 54930, 1989 WL 7941.

{¶ 10} In its decision granting a new trial, the trial court concluded that its own evidentiary ruling excluding the Guidelines "may have prejudiced" Peat in

cross-examining Eckerline. In applying the *Rohde* standard, evidentiary rulings are reviewed under an abuse-of-discretion standard. However,

> where a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use an abuse of discretion standard. In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law.

*Castlebrook Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808. See, also, *Slowbe v. Slowbe,* Cuyahoga App. No. 83079, 2004-Ohio-2411, 2004 WL 1068418.

{¶ 11} A misconstruction of law exists in this matter. The trial court erred when it determined that the Guidelines constituted a learned treatise under Evid.R. 706, finding that it was "published."

■ {¶ 12} Evid.R. 706, entitled "Learned treatises for impeachment," provides:

> Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
>
> (A) Relied upon by an expert witness in reaching an opinion;
>
> (B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.
>
> If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits.

{¶ 13} Thus, in order for the writing to be considered admissible for impeachment, it must be a "published" writing. The rules of evidence do not define "published" in this context. Therefore, we look to its ordinary meaning. Black's Law Dictionary (6th Ed.1990) defines "publish" as "[t]o make public; to circulate; to make known to people in general. To issue; to put into circulation." Moreover, "publication" is defined as "[t]he act of publishing anything; offering it to public notice, or rendering it accessible to public scrutiny. An advising of the public; a making known of something to them for a purpose." Id.

{¶ 14} Ohio courts have had the opportunity to define "publish" and "publication" in other contexts. See *Scully v. Cleveland Stevedore Co.* (Apr. 11, 1991), Cuyahoga App. No. 58397, 1991 WL 53885 ("publication" pursuant to Webster's Dictionary was defined as "the act of publishing," and "publish" meant "to make generally known"); *State v. Hustler Magazine* (Apr. 4, 1979), Hamilton App. No. C–77101, 1979 WL 208622 ("publish" pursuant to Black's Law Dictionary (Rev.4th Ed.1968) was defined as "to place before the public as though in mass media"); *Draudt v. Wooster City School Dist.* (2003), 246 F.Supp.2d 820, 831

(N.D.Ohio) ("publish" pursuant to Webster's Third New International Dictionary (1986) is defined as "to put out an edition or circulate it to the public").

{¶ 15} It is undisputed that the Guidelines were an internal document of the University of Kentucky's Department of Emergency Medicine. There was no evidence demonstrating that the Guidelines were "published" under the common and ordinary meaning of the word because they were not circulated to the public or put before public scrutiny. The Guidelines were an internal document used solely by the university's emergency department. Although Dr. Eckerline's characterization of the Guidelines as a "publication" in his curriculum vita may be a misnomer, the Guidelines themselves are not considered published under Evid.R. 706.

{¶ 16} Peat argues that the manner and format of the publication is irrelevant for purposes of Evid.R. 706. In support of this contention, he cites two federal cases that held that videotapes may qualify as learned treatises for purposes of the learned-treatise exception to the hearsay rule: that videotapes were "nothing more than a contemporary variant of a published treatise, periodical, or pamphlet." See *Costantino v. Herzog* (C.A.2, 2000), 203 F.3d 164, 171; *Loven v. State* (Tex.App.1992), 831 S.W.2d 387, 397.[2] However, those videotapes are distinguishable because they were produced and released by medical organizations to the medical community and used for educational purposes. The videotapes were not created by a university solely for that university, as in the instant case. Instead, they were created by various organizations and circulated to the medical community.

{¶ 17} Therefore, because we find that the Guidelines are not a learned treatise, the trial court erred when it granted Peat a new trial on the basis that the Guidelines could be used to impeach Dr. Eckerline. Accordingly, Kranitz's first assignment of error is sustained.

{¶ 18} The first assignment of error having been sustained, the second assignment is moot.[3] The judgment is reversed, and the jury verdict is reinstated.

Judgment reversed.

---

**2.** These cases were decided under the federal rules, which provide that learned treatises are an exception to the hearsay rule. Fed.R.Evid. 803(18). Ohio has not adopted that exception.

**3.** Kranitz contended in his second assignment of error that ordering a new trial was an abuse of discretion because the exclusion of the Guidelines was not prejudicial, but merely provided cumulative evidence and thus constituted harmless error.

DIANE KARPINSKI, J., concurs.

JAMES J. SWEENEY, P.J., dissents.

JAMES J. SWEENEY, Presiding Judge, dissenting.

{¶ 19} I respectfully dissent. I believe that the majority has too narrowly interpreted the definition of what should be considered published for purposes of Evid.R. 706. I think it misses the point to consider the Guidelines unpublished simply on the theory that they are not circulated or distributed to the general public. Defendant's expert identified the University of Kentucky, Department of Emergency Medicine, Evaluation and Treatment Guidelines ("Guidelines") as one of his "publications" on his curriculum vitae ("CV").[4] These Guidelines certainly were or are circulated for use and reference at least at the University of Kentucky's Department of Medicine, if not the medical community at large. Otherwise, what was the purpose of their creation?

{¶ 20} In addition to the foregoing, I believe that for purposes of this litigation the Guidelines were published even under the definition cited by the majority. The Guidelines came to plaintiff's attention because defendant produced their expert's CV. The defendant's expert published the Guidelines by circulating his CV, which lists them.

{¶ 21} Independent of Evid.R. 706, I believe it is an abuse of discretion to prohibit a party from cross-examining an expert witness about information the expert identifies as a credential in his or her own resume regardless of whether it is considered a learned treatise under Evid.R. 706. The defendant's expert must intend those reviewing his CV to consider the Guidelines relevant to his credentials as an expert. Examination of the expert concerning his identified credentials is relevant to the expert's overall credibility. For the foregoing reasons, I would affirm the judgment of the trial court.

---

4. Since plaintiff sought to cross-examine defendant's expert with Guidelines he himself considers published, that should be enough to end the inquiry of whether it is published for purposes of impeachment. In other words, this is not a case where a party is seeking to impeach an expert with some document unknown or unfamiliar to that expert.