OPINION
{¶ 1} Plaintiff-appellant, Zenfa Labs, Inc. ("Zenfa Labs"), appeals from a judgment of the Franklin County Court of Common Pleas in favor of Big Lots Stores, Inc. ("Big Lots Stores"). For the following reasons, we affirm the judgment of the common pleas court.
 {¶ 2} In Zenfa Labs, Inc. v. Big Lots Stores, Inc.,
Franklin App. No. 02AP-691, 2003-Ohio-628 ("Zenfa Labs I"), Zenfa Labs appealed from summary judgment in favor of Big Lots Stores. Concluding that the Franklin County Court of Common Pleas erred, this court reversed the common pleas court's judgment and remanded the matter to the common pleas court.
 {¶ 3} Underlying this dispute is Fisher Health Products, Inc.'s ("Fisher") sale of personal deodorant products, which were valued at $81,000, to Big Lots Stores. L L Sales, Fisher's manufacturer's representative, effected the sale with delivery in June 1997. Fisher invoiced Consolidated Stores Corporation, Big Lots Stores' parent company, for the full amount, payable in 30 days. Thereafter, on June 20, 1997, Fisher executed a written agreement, wherein it assigned this invoice to Zenfa Labs. ZenfaLabs I, at ¶ 3.
 {¶ 4} Apparently within hours of execution of the written assignment agreement, disagreements arose between Zenfa Labs and Fisher. Id. at ¶ 6. The president of Fisher orally notified Zenfa Labs that it was revoking assignment of the invoice. Thereafter, Fisher issued a new invoice to Consolidated Stores Corporation, wherein it specified that payment should be made to Fisher and offered a two percent discount if payment was received within ten days. Id. Accordingly, on June 27, 1997, Big Lots Stores took a two-percent discount and paid the new invoice in full. Id.
 {¶ 5} On or about June 20, 1997, however, Zenfa Labs attempted to send Big Lots Stores via facsimile a notice of assignment concerning payment of the Fisher invoice. Id. Claiming breach of contract and an assignment under the common law, as well as asserting that Big Lots Stores violated former R.C.1309.37(C), Zenfa Labs later sued Big Lots due to Big Lots Stores' failure to pay the purportedly assigned invoice. ZenfaLabs I, at ¶ 2. (Complaint, filed June 26, 2001.) Big Lots Stores answered the complaint and also filed a third-party complaint against Fisher. Id. at ¶ 2. Fisher has failed to answer or otherwise appear in the case. Id.[1]
 {¶ 6} In Zenfa Labs I, this court observed that "[i]t is an unresolved question of fact in this case whether Big Lots ever received this notice of assignment." Zenfa Labs I, at ¶ 6. TheZenfa Labs I court stated that:
Essentially, two substantive issues are presented * * *: first, whether the assignment from Fisher to Zenfa constituted a binding and enforceable contract, or whether it failed for lack of consideration, mutual rescission, or justifiable anticipatory repudiation by Fisher, or other reasons; and, second, whether Big Lots received proper notice of the assignment and consequently pursuant to R.C. 1309.37(C) could not discharge its obligation on the invoice by paying Fisher, which no longer had any rights thereunder.
Id. at ¶ 17.
 {¶ 7} In Zenfa Labs I, Zenfa Labs asserted four errors. TheZenfa Labs I court ultimately: (1) overruled Zenfa Labs' first assignment of error, (2) sustained Zenfa Labs' second assignment of error, (3) found Zenfa Labs' third assignment of error was moot, and (4) sustained in part and overruled in part Zenfa Labs' fourth assignment of error.
 {¶ 8} In Zenfa Labs I, Zenfa Labs asserted in its second assignment of error that the trial court erred when it found that the assignment of the invoice was not given in exchange for valuable consideration. Zenfa Labs, at ¶ 11. Applying Ohio law, the Zenfa Labs I court found that "Zenfa's argument is limited to the proposition that there remained a material issue of fact as to whether consideration was given for the assignment and, if the promised consideration was not made good by Zenfa, whether this is excused by a previous breach by Fisher, which pursued collection from Big Lots despite the prior assignment." Id. at ¶ 22. Sustaining this assignment of error, the Zenfa Labs I court found "that there subsists a material issue of fact in the case regarding the validity and effect of the assignment between Fisher and Zenfa, and consequently a material issue of fact regarding Zenfa's right to pursue collection of the invoice from Big Lots." Id. at ¶ 53.
 {¶ 9} In its fourth assignment of error in Zenfa Labs I,
Zenfa Labs asserted "that the trial court erred in granting summary judgment to Big Lots and denying summary judgment to Zenfa, because R.C. 1309.37(C) clearly requires Big Lots, as the debtor on the invoice, to pay Zenfa, as the assignee, once Big Lots had received notice of the assignment." Id. at ¶ 55.
 {¶ 10} Sustaining in part and overruling in part this assignment of error, the Zenfa Labs I court stated:
Because of the contradictory evidence in the present case regarding receipt of the notice of the assignment, there remains a material issue of fact on the question of whether Big Lots was required to pay the assignee, Zenfa, or whether Big Lots could discharge its obligation on the invoice by paying the original account holder, Fisher. Zenfa presented evidence that it had duly faxed notice of the assignment to the telephone number that Consolidated/Big Lots held out as appropriate for delivery of such notices, and that this notice had been sent long enough before Big Lots made payment to Fisher that, with the exercise of organizational due diligence, the assignment should have come to the attention of persons charged with assuring payment to the correct party. Big Lots presented evidence that it had not, in the course of its usual business routine in such matters, received, logged, or filed the notice sent by Zenfa. The evidence is fundamentally contradictory and so the issue cannot be resolved without resorting to an assessment of credibility. The trial court therefore erred in granting summary judgment for Big Lots on the basis that Big Lots never received notice of the assignment pursuant to R.C. 1309.37(C). To the extent that Zenfa's fourth assignment of error asserts error in this respect, it is sustained.
To the extent, however, that Zenfa asserts that the trial court erred when it failed to grant summary judgment for Zenfa on this question, the assignment of error is overruled. Denial of a motion for summary judgment, with certain exceptions not present in the case before us, is not a final, appealable order. Stateex rel. Overmeyer v. Walinski (1966), 8 Ohio St.2d 23. * * *
Id. at ¶ 57-58.
 {¶ 11} Thereafter, having sustained Zenfa Labs' second assignment of error and having sustained in part and overruled in part Zenfa Labs' fourth assignment of error, the Zenfa Labs I
court remanded the matter to the common pleas court.
 {¶ 12} At the bench trial following this court's remanding of the matter, Big Lots Stores orally moved for a directed verdict after Zenfa Labs' opening statement. The common pleas court denied this motion. (Tr. 8-9.) At the close of plaintiff's case-in-chief, Big Lots Stores again orally moved for a directed verdict and submitted a bench brief in support of this motion. (Tr. 154.) In its second motion for directed verdict, Big Lots Stores asserted the following: (1) because Zenfa Labs failed to comply with R.C. 1703.03, Zenfa Labs was precluded from bringing suit against Big Lots Stores; (2) because Zenfa Labs failed to proffer evidence of an enforceable contract between it and Big Lots Stores, Zenfa Labs' breach of contract claim could not be sustained; and (3) because former R.C. 1309.37(C) had been repealed and was inapplicable to the assignment at issue, Zenfa Labs' claim under former R.C. 1309.37(C) could not be sustained.
 {¶ 13} Granting Zenfa Labs an opportunity to file a responsive memorandum, the common pleas court deferred ruling on Big Lots Stores' second motion for a directed verdict. (Tr. 159.) Following Big Lots Stores' second motion for a directed verdict, Zenfa Labs orally withdrew its breach of contract claim. (Tr. 156.)
 {¶ 14} Rendering no express ruling concerning Big Lots Stores' second motion for a directed verdict, the trial court later delivered judgment in favor of Big Lots Stores. We construe the trial court's judgment as impliedly overruling Big Lots Stores' second motion for a directed verdict. See, generally,Maust v. Palmer (1994), 94 Ohio App.3d 764, 769 (stating that "[g]enerally when the trial court enters judgment without expressly determining a pending motion, the motion is considered impliedly overruled").
 {¶ 15} From this second judgment in favor of Big Lots Stores, Zenfa Labs now appeals and assigns two errors for our consideration:
Assignment of Error One
THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH TURNED ON AN INCORRECT READING OF R.C. 1301.01(Z) AND (AA).
Assignment of Error Two
THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.
 {¶ 16} In its decision, the common pleas court made a factual finding that "[o]n June 27, 1997, [sic] Fisher executed an assignment of the account with Big Lots to Plaintiff Zenfa Labs, Inc." (Finding of Fact No. 10, at 2.) Although the common pleas court observed that Fisher's owner, Adalbert Pesch, testified that he revoked the assignment shortly after it was made, the common pleas court did not find the testimony of Mr. Pesch to be credible. (Decision, at 2.) Without citing any legal authority, the common pleas court also concluded that Adalbert Pesch could not unilaterally revoke the assignment. (Id.) In this appeal, Zenfa Labs does not challenge the determinations by the common pleas court that Fisher executed an assignment of the invoice to Zenfa Labs and that Fisher could not unilaterally revoke its assignment of the invoice.
 {¶ 17} After concluding that Fisher executed an assignment of the invoice to Zenfa Labs and that Fisher could not unilaterally revoke this assignment, the common pleas court reasoned that "[a]s such, the crucial issue in this case is whether Big Lots ever received notice of the assignment. If Big Lots did not receive notice of the assignment prior to payment, then its obligation has been discharged, and judgment must be entered against Zenfa Labs. The burden of proof as to notice is on Zenfa Labs." (Id.)
 {¶ 18} Apparently construing former R.C. 1301.01(AA), the common pleas court stated: "O.R.C. 1309.01(Z), in effect at the time of the assignment, provides that `[n]otice . . . received by an organization is effective . . . when it is brought to theattention of the individual conducting thetransaction.'"[2] (Id. at 3; emphasis sic.) The common pleas court further stated that "[a]lthough the statute requires the organization receiving the notice to act with due diligence, an assignee cannot simply send a notice of assignment to the organization in order to achieve its goal of notice." (Id.) Ultimately, the common pleas court concluded that Zenfa Labs failed to meet its burden of proving that Big Lots Stores received notice of the assignment before Big Lots Stores paid Fisher's invoice.
 {¶ 19} Plaintiff's first assignment of error asserts that the common pleas court incorrectly construed former R.C. 1301.01(Z) and (AA) when it concluded that Big Lots legally did not receive notice of Fisher's assignment of the invoice to Zenfa Labs.
 {¶ 20} As a threshold issue, we first consider which law should govern this appeal, namely, Ohio law or Canadian law. InZenfa Labs I, this court noted that "both Fisher and Zenfa are Canadian entities with addresses in Mississauga, Ontario." Id. at ¶ 7, "[w]hile Big Lots and Consolidated appear to have their principal places of business in Ohio." Id. The Zenfa I court also noted that "[a]s to most of the case, particularly those aspects dealing with transactions between Big Lots and Zenfa and Big Lots and Fisher, application of Ohio law seems appropriate, particularly as no one has argued otherwise." Id. at ¶ 21. TheZenfa Labs I court further stated:
* * * [T]he parties have both argued the case in the apparent expectation that this aspect will be decided under Ohio law, apparently willing to accept any res judicata or collateral estoppel consequences, were subsequent litigation between those parties to arise in their home jurisdictions. In accordance with the apparent expectations of the parties, therefore, we will consider the matter under contract principles set forth in the law of Ohio.
Id.
 {¶ 21} In the present case, as in Zenfa Labs I, the parties again have the apparent expectation that Ohio law applies. Because the Zenfa I court previously considered the matter under contract principles set forth in Ohio law, we find that application of Ohio law to the matter before us is now the law of the case.
 {¶ 22} The law-of-the-case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. This doctrine "is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Hopkins v. Dyer, 104 Ohio St.3d 461,2004-Ohio-6769, at ¶ 15, citing State ex rel. Potain v. Mathews
(1979), 59 Ohio St.2d 29, 32. The law-of-the-case doctrine is a rule of practice, not a binding rule of substantive law.Hopkins, at ¶ 15, citing Hubbard ex rel. Creed v. Sauline
(1996), 74 Ohio St.3d 402, 404; Nolan, at 3. Cf. Hopkins, at ¶ 22 (stating that "[r]es judicata is a substantive rule of law that applies to a final judgment, whereas the law-of-the-case doctrine is a rule of practice analogous to estoppel").
 {¶ 23} Because (1) the parties again have the apparent expectation that Ohio law applies; (2) in Zenfa Labs I this court applied Ohio law; (3) applying Ohio law to the instant matter is necessary to ensure consistency; and (4) this court's application of Ohio law in Zenfa Labs I is the law of the case, we shall apply Ohio law to the matter now before us.
 {¶ 24} Under Ohio law, an "abuse of discretion" standard "should be used when the trial court makes discretionary decisions based on such things, for example, as evaluating the credibility of witnesses * * * ruling on the admission of evidence; making factual determinations * * * and whether to appoint a receiver." Castlebrook Ltd. v. Dayton Properties Ltd.Partnership (1992), 78 Ohio App.3d 340, 346. (Citations omitted.) "However, where a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use an abuse of discretion standard. In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court, since an important function of appellate courts is to resolve disputed propositions of law." Id; see, also, Akron v.Frazier (2001), 142 Ohio App.3d 718, 721, citing State v.Sufronko (1995), 105 Ohio App.3d 504, 506 (observing that "[a]n appellate court's review of the interpretation and application of a statute is de novo").
 {¶ 25} To the extent that Zenfa Labs asserts in its first assignment of error that the common pleas court misconstrued former R.C. 1301.01(Z) and (AA), we shall apply a de novo standard of review as to the common pleas court's construction of the law. See Herakovic v. Catholic Diocese of Cleveland,
Cuyahoga App. No. 85467, 2005-Ohio-5985, at ¶ 13, citing BPCommunications Alaska, Inc. v. Cent. Collection Agency (2000),136 Ohio App.3d 807, dismissed, appeal not allowed,89 Ohio St.3d 1464 (explaining that de novo appellate review "means that the court of appeals independently reviews the record and affords no deference to the trial court's decision"). However, as to the common pleas court's evaluation of witness credibility, its evidentiary rulings, and its factual determinations, we shall review the court's determinations under an abuse of discretion standard. Castlebrook Ltd., supra, at 346.
 {¶ 26} Furthermore, to the extent that Zenfa Labs contends that the common pleas court's judgment is against the manifest weight of the evidence, we acknowledge that, as to civil judgments, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. When conducting such a review, we are guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 79-80. See, also, id. at 80 (stating that "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge").
 {¶ 27} In its appellate brief, Zenfa Labs asserts: "The single issued presented to this honorable Court is simply whether the assignment in question was provided to Big Lots as required for it to have sufficient notice pursuant to [former] R.C. 1309.37(C)." (Appellant's brief, at 11.)
 {¶ 28} Former R.C. 1309.37(C)[3] provided, as follows:
The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.
 {¶ 29} Big Lots Stores contends, however, that pursuant to former R.C. 1309.04(E), former R.C. 1309.37(C) is inapplicable under these particular facts and circumstances.
 {¶ 30} Former R.C. 1309.04 provided, as follows:
Sections 1309.01 to 1309.50 of the Revised Code do not apply:
* * *
(E) to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract, or a transfer of a single account to an assignee in whole or partial satisfaction of a pre-existing indebtedness; * * * [.]
Cf. R.C. 1309.109(D)(5) and (7).[4]
 {¶ 31} Big Lots Stores asserts that Zenfa Labs' proffered evidence at trial establishes that: (1) the Big Lots account was the only account that Fisher assigned to Zenfa; (2) this assignment was given to Zenfa Labs to satisfy Fisher's pre-existing debts to Zenfa Labs; and (3) the sole purpose of this assignment was to allow Zenfa Labs to collect the payment from Big Lots Stores.
 {¶ 32} Applying former R.C. 1309.04 to Zenfa Labs' proffered evidence, Big Lots Stores therefore reasons former R.C.1309.37(C) is inapplicable to the assignment at issue. See, e.g.,Staats v. The City Natl. Bank Trust Co. of Columbus, Ohio
(July 16, 1974), Franklin App. No. 74AP-113 (holding that former R.C. 1309.04[E] applied to a transaction in that case because commissions earned by the debtor "were assigned to the defendant bank in payment of the amounts of the obligations due and owing on the notes to the defendant bank, and as such was an assignment of an account, or contract right, which was for the purpose of collection only and not specifically as a secured transaction in the form of a security agreement for the payment of an obligation"); see, also, Calamari Perillo, Contracts (3 Ed. 1987), 724-725, Section 18-3 (stating that "[o]rdinarily parties to an assignment have one of two purposes in mind. They may intend an outright transfer of the right in question, or they may intend that the right be transferred as collateral security for an indebtedness. An assignment made as collateral security creates a security interest in the assignee"). (Footnote omitted.)
 {¶ 33} For its part, Zenfa Labs argues that in Zenfa LabsI, this court implicitly, if not explicitly, confirmed that former R.C. 1309.37(C) created a cause of action and, as consequence, the issue is now res judicata. Alternatively, in its reply brief, Zenfa Labs contends whether the parties intended the assignment to create a security interest requires a factual determination for which there is insufficient evidence in the record.
 {¶ 34} The doctrine of res judicata concerns both claim preclusion, which in Ohio has been historically called estoppel by judgment, and issue preclusion, which traditionally has been known as collateral estoppel. Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, 381. "[T]he claim preclusion concept holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Ft. Frye Teachers Assn., OEA/NEA v. State Emp.Relations Bd. (1998), 81 Ohio St.3d 392, 395, citing Grava,
supra, at syllabus. Comparatively, "[t]he doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." Ft. Frye Teachers Assn., OEA/NEA, at 395, citingNorwood v. McDonald (1943), 142 Ohio St. 299, paragraph three of the syllabus; Trautwein v. Sorgenfrei (1979),58 Ohio St.2d 493, syllabus; Goodson v. McDonough Power Equip., Inc. (1983)2 Ohio St.3d 193, paragraph one of the syllabus.
 {¶ 35} Notwithstanding Zenfa Labs' claim that the Zenfa LabsI court implicitly, if not explicitly, confirmed that former R.C. 1309.37(C) created a cause of action in the matter at issue, in Zenfa Labs I, this court did not determine that former R.C.1309.37(C) created a cause of action under the facts and circumstances of this case. Rather, this court, as well as the parties, seemingly assumed that former R.C. 1309.37(C) was applicable to the matter before it. See id., at ¶ 56 (applying former R.C. 1309.37[C] and stating that under former R.C.1309.37[C] Big Lots Stores was required to pay Zenfa Labs if notice of the assignment was received). In Zenfa Labs I,
whether former R.C. 1309.37(C) was applicable to the matter at issue was not actually and directly litigated.
 {¶ 36} Because whether or not former R.C. 1309.37(C) applied to the assignment at issue was not actually and directly litigated in Zenfa Labs I, we do not find that Zenfa Labs I
collaterally estops Big Lots Stores from now raising whether former R.C. 1309.37(C) applies to the assignment at issue. However, because under either former R.C. 1309.37(C) or the common law, the issue resolves to whether Big Lots Stores had notice of the assignment to Zenfa Labs prior to the payment of the invoice to Fisher, we do not necessarily need to determine whether former R.C. 1309.37(C) is implicated. See, e.g., Calamari Perillo, supra, at 743, Section 18-17 (observing that "Article 9 of the [Uniform Commercial] Code provides that the obligor may continue to pay the assignor until he receives notice of the assignment and his duty to pay the assignee. This is in accord with the * * * common law rule") (footnote omitted); see, also, 3 Farnsworth on Contracts (2004), 102, Section 11.7 (observing "[i]f the obligor pays the assignor without knowing of the assignment, it would plainly be unfair to require the obligor to pay again. Therefore, if the obligor pays before being notified of the assignment, the debt is discharged"). (Footnote omitted.).
 {¶ 37} In Equilease Corp.v. State Fed. S L Assn. (C.A.10, 1981), 647 F.2d 1069, 1073, the United States Court of Appeals for the Tenth Circuit observed that "[i]t is generally agreed that prior to notification of an assignment, a debtor may pay the creditor the funds owing and such payment constitutes a complete defense against an action brought by the undisclosed assignee against the debtor." The Equilease Corp. court further observed that "[t]he general rule is that, as between the assignor and his assignee and the assignor's creditors or those who merely succeed to the rights of and stand in his shoes, notice of the assignment to the debtor or holder of the fund is not a prerequisite to the protection of the assignee." Id. However, the Equilease Corp.
court explained that "the requirement as to notice applies to the assignment of obligations * * * in order to create a liability flowing from the debtor to the assignee who failed to give notice." Id.
 {¶ 38} At least one Ohio court has followed this general common law rule that liability flows from a debtor to an assignee after a debtor has been notified of an assignment. In RoselawnChiropractic Center, Inc. v. Allstate Ins. Co.,160 Ohio App.3d 297, 2005-Ohio-1327, appeal not allowed, 106 Ohio St.3d 1506, Tiffany Tate was injured in an automobile accident and she assigned to a health care provider proceeds from an insurance claim that were equal to the cost of her treatment. Even though the health care provider forwarded Tate's assignment and an itemized statement of treatment to the insurance company, upon settlement of the claim, the insurance company paid all settlement money directly to Tate, rather than to the health care provider. Denied any compensation for the medical treatment it had provided to Tate, the health care provider sued both Tate and the insurance company.
 {¶ 39} The Roselawn Chiropractic Center court observed it was undisputed that the insurance company had received notification from the health care provider that Tate had assigned to the health care provider the proceeds from any claim against the insurance company and its insured. Id. at ¶ 8. According to the court, once Tate had assigned to the health care provider her potential proceeds from the lawsuit, the insurance company was obligated to honor the assignment and pay the health care provider the amount owed by Tate. Id. at ¶ 13.
 {¶ 40} In Roselawn Chiropractic Center, the court stated that "[a]n account debtor * * * is authorized to pay the assignor * * * until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee." Id. at ¶ 7. (Footnote omitted.) The court explained that "[t]he assignee is entitled to exercise collection rights against the account debtor as long as the account debtor `receives (1) an indication that the account has been assigned, (2) a specific direction that the payment is to be made to the assignee rather than the assignor, and (3) a reasonable identification of the rights assigned.'" Id. at ¶ 7, quotingFirst Bank of Marietta v. Roslovic Partners, Inc. (1999),86 Ohio St.3d 116, 118-119.[5]
 {¶ 41} Here, in the case before us, the common pleas court stated in its decision that "even if the Court were to conclude that the notice of the assignment was actually faxed to Big Lots, absolutely no evidence was presented to show that the notice of assignment was ever brought to the attention of the individual conducting the transaction. Indeed, it appears that the people who would have been responsible for the transaction had it been brought to their attention have no recollection of the matter." (Decision, at 4-5.)
 {¶ 42} Based upon our review of the evidence, we find no evidence showing that notice of Fisher's assignment to Zenfa Labs was brought to the attention of those account payable employees at Big Lots Stores who would have been responsible for processing the assignment at issue prior to Big Lots' payment of the Fisher invoice. Moreover, according to the evidence, absent from Big Lots Stores' file is a copy of the Fisher assignment to Zenfa Labs. From this lack of evidence, the common pleas court, as the trier of fact, reasonably could infer that Big Lots Stores did not receive the facsimile communication as part of its ordinary business routine. See, generally, Evid.R. 803(7) (providing that, unless circumstances indicate a lack of trustworthiness, the absence of a record kept in the regular practice of business is an exception to the hearsay rule).
 {¶ 43} Furthermore, even assuming that the assignment at issue was collateral security and, therefore, former R.C.1309.37(C) was implicated, we do not conclude that the trial court's judgment was error.
 {¶ 44} Former R.C. 1301.01(Z),[6] which was in effect in 1997, provided, as follows:
A person "notifies" or "gives" a notice or notification to another person by taking the steps that may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it. A person "receives" a notice or notification when either of the following applies:
(1) It comes to the person's attention.
(2) It is duly delivered at the place of business through which the contract was made or at any other place held out by the person as the place for receipt of such communications.
 {¶ 45} Under former R.C. 1301.01(AA):
Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routine. Due diligence does not require an individual acting for the organization to communicate information unless that communication is part of the individual's regular duties or unless the individual has reason to know of the transaction and that the transaction would be materially affected by the information.
See, generally, former R.C. 1301.01 (providing that former R.C.1301.01[Z] and [AA] apply to former R.C. Chapter 1309 unless the context otherwise requires).
 {¶ 46} Zenfa Labs asserts that in 1997 Big Lots Stores' practice in the accounts payable department concerning facsimile communications was disorganized and deficient and, therefore, the common pleas court should have found that Big Lots Stores failed to act with due diligence under former R.C. 1301.01(AA). We disagree.
 {¶ 47} Here, the common pleas court concluded that Big Lots Stores exercised due diligence. (Decision, at 5.) Assuming that Zenfa Labs sent, via facsimile, a copy of the Fisher assignment to Big Lots Stores, we cannot conclude that a determination that Big Lots Stores acted with due diligence under former R.C.1301.01(AA) is against the manifest weight of the evidence.
 {¶ 48} At trial, Marvin Connor, who was the accounts payable manager at Big Lots Stores in June 1997, testified that typically a party would not send a facsimile communication without calling him beforehand to inform him to expect a facsimile communication. (Tr. 173.) Upon cross-examination, Mr. Connor testified as follows:
Q. [By Mr. David A. Goldstein]: What if I didn't call you and tell you a fax was coming?
A. For the biggest part you didn't get a fax notice. You requested it. You wouldn't just send me a fax. I had to request it from you or something, because for the biggest part you just didn't get a fax.
(Tr. 173.)
 {¶ 49} Jennifer Christy, Big Lots Stores' current accounts payable manager, testified that in 1997 when a facsimile communication was received in the accounts payable department, the person who saw a facsimile communication typically would deliver the facsimile to the facsimile's addressee. (Tr. 119.)
 {¶ 50} By reasonable inference, Mr. Connor's testimony establishes that it was not routine for the accounts payable department of Big Lots Stores to typically receive assignments by facsimile without some forewarning. Moreover, according to Ms. Christy's testimony, if facsimile communications were received, employees would deliver these faxes to the respective addressees.
 {¶ 51} Both Mr. Connor's and Ms. Christy's testimonies, as well as reasonable inferences drawn from them, if believed by the trier of fact, demonstrate that in 1997 Big Lots Stores had some reasonable routine for the handling of facsimile communications. Even assuming that former R.C. 1301.01(AA) is applicable to the assignment at issue, Mr. Connor's and Ms. Christy's testimonies constitute some competent, credible evidence to support a finding that Big Lots Stores acted with due diligence.
 {¶ 52} For the foregoing reasons, we therefore overrule Zenfa Labs' first assignment of error.
 {¶ 53} Zenfa Labs' second assignment of error asserts that the trial court's judgment in favor of Big Lots Stores was against the sufficiency of the evidence.
 {¶ 54} "The standard for a review of the sufficiency of the evidence in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party[.]"Hartford Cas. Ins. Co. v. Easley (1993), 90 Ohio App.3d 525,530. "In other words, is the verdict one which could reasonably be reached from the evidence?" Id.; see, also, Howard v.Himmelrick, Franklin App. No. 03AP-1034, 2004-Ohio-3309, at ¶ 4. But, see, Reed v. State Med. Bd. of Ohio, 162 Ohio App.3d 429,2005-Ohio-4071, at ¶ 33 (stating that "in a civil case, the tests for weight and sufficiency of the evidence are essentially the same"). Cf. C.E. Morris Co., supra, at syllabus (holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence").
 {¶ 55} Here, when construing the evidence most strongly in favor of Big Lots Stores, we conclude that the trial court's judgment is one that could reasonably be reached from the evidence. Based upon the evidence, we find no evidence showing that notice of Fisher's assignment to Zenfa Labs was brought to the attention of those account payable employees at Big Lots Stores who would have been responsible for processing the assignment at issue prior to Big Lots' payment of the Fisher invoice. Furthermore, absent from Big Lots Stores' file was a copy of the assignment that was purportedly sent via facsimile. Based upon this evidence, we conclude that the common pleas court's judgment in favor of Big Lots Stores is one that reasonably could be reached from the evidence.
 {¶ 56} Accordingly, Zenfa Labs' contention that the common pleas court's judgment is supported by insufficient evidence is not persuasive. We therefore overrule Zenfa Labs' second assignment of error.
 {¶ 57} In summary, having overruled both of Zenfa Labs' assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Travis, JJ., concur.
[1] Big Lots Stores' third-party complaint against Fisher which sought indemnification was rendered moot by the trial court's judgment in favor of Big Lots Stores. In its decision, the common pleas court stated: "Because judgment is entered in favor or [sic] defendant Big Lots, its cross-claim [sic] against Fisher is dismissed." (March 2, 2005, Decision, at 5.) See, generally,Wise v. Gursky (1981), 66 Ohio St.2d 241, syllabus (holding that "[a] judgment for the defendant in a civil action, which judgment renders the defendant's third-party complaint for indemnification or contribution moot, is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a judgment").
[2] Former R.C. 1301.01(AA), at all times relevant to the matter at issue, stated, in relevant part: "Notice * * * received by an organization * * * when it is brought to the attention of the individual conducting that transaction * * *."
[3] Effective July 1, 2001, R.C. 1309.37 was repealed by (2001) Am.Sub.S.B. No. 74, 149 Ohio Laws, Part I, 106. See, generally, R.C. 1.48 (providing that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective"); Section 28, Article II, Ohio Constitution (providing that the General Assembly has no power to pass retroactive laws); Bielat v. Bielat (2000), 87 Ohio St.3d 350,353 (requiring a threshold finding that the General Assembly expressly intended a statute to apply retrospectively before inquiring whether a statute may constitutionally be applied retrospectively). Here, we apply Ohio law then in effect at all times relevant to the matter under consideration.
[4] R.C. 1309.109(D) provides:
This chapter does not apply to the following:
* * *
(5) An assignment of accounts, chattel paper, payment intangibles, or promissory notes that is for the purpose of collection only;
* * *
(7) An assignment of a single account, payment intangible, or promissory note to an assignee in full or partial satisfaction of a preexisting indebtedness * * *.
[5] The Supreme Court of Ohio in Roslovic Partners, Inc.
construed former R.C. 1309.37(C). See id. at 118. In Roslovic,
the court was asked to consider "whether payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment, thus subjecting the account debtor to liability to the assignee for the payments made to the assignor." Id. TheRoslovic court held: "Payments made by an account debtor to an assignor of accounts receivable after receiving sufficient notice of an assignment violate the assignment, thus subjecting the account debtor to liability to the assignee for the payments made to the assignor." Id. at syllabus.
[6] Since 1997 when Zenfa Labs purportedly notified Big Lots Stores via facsimile of the assignment, R.C. 1301.01 has been amended twice. See (1999) Am.Sub.H.B. No. 283, 148 Ohio Laws, Part II, 2339; (2001) Am.Sub.S.B. No. 74, 149 Ohio Laws, Part I, 106.